# Prewitt v. Ashford.

*Statutory Action in nature of Ejectment.*

1. *Chancery decree, as vesting or divesting title to land.*—Except as specially provided by statute (Code, § 3595), a decree rendered by the Chancery Court, purporting to divest the legal title to land out of one person and vest it in other, does not, *proprio vigore*, confer a legal title which can avail anything in an action at law.

2. *Deed delivered in escrow.*—When a deed is deposited as an escrow, to be delivered to the grantee on the happening of a subsequent event, or the performance of a condition, its subsequent delivery when the contingency has happened, or the condition has been performed, will relate back, and take effect as from its delivery as an escrow, if necessary to protect the intervening rights of the grantee; and in the event of his death, a delivery to his heirs will be held to transmute title to them by inheritance from him, where nothing intervenes to prevent; but, if the grantee has conveyed to another by deed with warranty, his heirs acquire no title by such subsequent delivery to them.

3. *After-acquired title to lands conveyed by deed with warranty, or by quit-claim.*—When lands have been conveyed by deed with warranty, a title afterwards acquired by the grantor at once enures to the benefit of the grantee, and takes effect, if there are no intervening equities, as of the time when the conveyance was executed; and a

[Prewitt v. Ashford.]

quit-claim deed, although it does not estop the grantor from afterwards acquiring and holding an adverse interest in the land, conveys to the grantee such of the covenants of a former grantor as run with the land, and gives him the benefit of any title which may afterwards accrue under those covenants.

4. *Compromise of pending suit, ·how pleaded or presented; conclusiveness of chancery decree.*—When a pending suit in equity is compromised, the compromise should be brought to the attention of the court before final decree, and properly by supplemental answer in the nature of a plea *puis darrien continuance* at law; but, where the agreement of compromise is made to depend on the result of another suit against the defendant by third persons, and a quit-claim deed is executed as an escrow by the complainant, to be delivered to him on the decision of that suit in his favor, his failure to bring the agreement to the attention of the court before final decree, does not prevent him from claiming under that deed, on its subsequent delivery to him, the other suit having been decided in his favor after the rendition of such final decree, nor does the decree conclude him from asserting the title thereby acquired.

APPEAL from the Circuit Court of Lawrence.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by William V. Prewitt, against Mrs. Caroline Ashford, to recover a tract of land containing 705 acres; and was commenced on the 22d March, 1888. The land sued for was part of a larger tract, which once belonged to Thos. H. Ashford, the husband of Mrs. Caroline Ashford; and it was sold and conveyed by him, prior to 1858, to Richard Prewitt. On the 27th April, 1866, Richard Prewitt conveyed said land, with several other tracts, by deed of marriage settlement, to Mrs. Josephine Prewitt, his wife, in consideration of the marriage. Richard Prewitt was at that time in embarrassed circumstances, if not insolvent; and the validity of the marriage settlement was assailed by one of his creditors, by bill filed in the Chancery Court of Lawrence, on the 4th day of September, 1866. The complainant in that suit was John A. Lile, as administrator of the estate of Thomas Lile, deceased; and the defendants were said Prewitt and wife, and several creditors whose debts were made prior liens on the property. In that case, on final hearing on pleadings and proof, a decree was rendered by the chancellor, 21st September, 1874, dismissing the bill, on the ground that the marriage was a sufficient consideration to support the settlement; and the decree was affirmed, on appeal to this court, October 11th, 1881. The case was never reported, because, two judges of this court being incompetent to sit, it was submitted, by written agreement entered of record, to the decision of Judge SOMERVILLE, sitting alone as a special court.

Mrs. Ashford did not join with her husband in the conveyance of the land to Prewitt; and on the 9th February, 1871, after the death of her husband, she filed a bill in equity against

[Prewitt v. Ashford.]

his administrator, said Prewitt and others, seeking to establish a resulting trust in said tract of land, and several other tracts of land which her husband had sold and conveyed, on the ground that the lands were bought for her, the purchase money paid with funds belonging to her statutory estate, and the title taken in the name of her husband by mistake. The bill prayed, also, a reformation of the deed to Thomas H. Ashford, the delivery of possession of the land by the several purchasers, an account of the rents and profits, and general relief. On the 23d November, 1875, while that suit was pending, and while the appeal from the chancellor's decree in the other suit above mentioned (*Lile v. Prewitt*) was pending in the Supreme Court, Mrs. Ashford and said Prewitt met in the office of the register in chancery, to attend the taking of depositions in the cause between them; and on his representations, as the evidence shows, that he had paid the purchase-money in full for the 705 acres here in controversy, without notice of her alleged equity, but would have no interest in further defending her suit, if the case then pending in the Supreme Court on appeal should be decided against him and his wife, they entered into some compromise, or agreement for a settlement, which was not reduced to writing, except that Mrs. Ashford signed a quit-claim deed, which was placed in the hands of J. B. Moore to be held as an escrow, and which was as follows:

"Whereas, previous to his death, my husband, Thomas H. Ashford, sold to Richard Prewitt about 705 acres of land," particularly describing it; "I claim that said lands were purchased with money belonging to my separate estate under the statutes of Alabama, and said Prewitt alleges that he paid my husband in full for said lands before his death, and received from him a conveyance of said lands. In consideration of said alleged payment, and other considerations me thereunto moving, I have and do by these presents convey all the right, title and interest in said lands above described, south of said line of railroad, to Richard Prewitt. I convey no other title to said lands than I have, by this my quit-claim deed, and make no warranty of title. In witness whereof," &c. At the same time, and as part of the same transaction, Mrs. Ashford signed and delivered to said Moore, retaining a copy herself, a written instrument in these words: "*Memorandum.* I have this day executed a quit-claim deed to certain lands in Lawrence county, 705 acres lying south of the M. & C. railroad, to Richard Prewitt. Said lands are described in said deed. I have delivered said deed to J. B. Moore as an escrow, to be delivered to said Prewitt upon the happening of the following

contingency : if a certain suit now pending in the Supreme Court of Alabama, *Lile's Adm'r v. Richard Prewitt et al.*, is affirmed, said Moore is to deliver said deed to said Prewitt; otherwise he is to hold subject to my order."

This agreement was not in any manner brought to the attention of the Chancery Court in which Mrs. Ashford's suit was pending; and on the 12th March, 1877, on final hearing, on pleadings and proof, that court rendered a decree in her favor; by which, after adjudging that she was entitled to certain moneys in the hands of her husband's administrator, the proceeds of the sale of other lands, it was "ordered, adjudged, and decreed, that the legal and equitable title in and to the balance of said lands be, and the same hereby is, divested out of the defendants in said cause, and vested absolutely in said complainant, Caroline Ashford;" and a writ of possession was ordered in her favor, if possession was not delivered on demand. On the 14th May, 1877, Prewitt filed a petition for rehearing, setting up the said agreement, and alleging that he had abandoned the active defense of the suit in reliance on that agreement; and on the 29th October, 1880, while that petition was still undisposed of, he filed a bill seeking to impeach the decree on the ground of fraud, and setting up the same matters. Said Prewitt died on the 23d November, 1882, and his suit was revived in the name of his administrator. On final hearing on pleadings and proof, June 29th, 1887, the chancellor dismissed the bill, on the ground of *laches*; and his decree was affirmed by this court on appeal.—*Heflin v. Ashford*, 85 Ala. 125. At the "Fall term, 1882," the suit of Mrs. Ashford against Prewitt was struck from the docket, on the ground that it was improperly there.

On the 6th February, 1883, Mrs. Prewitt, who had continued in possession of the land, conveyed it by deed to William V. Prewitt, the plaintiff in this action; and he continued in uninterrupted possession from that time until a few days before the commencement of this suit, when he was dispossessed under a writ of posssession issued on the decree in favor of Mrs. Ashford. Mrs. Ashford's quit-claim deed to Prewitt was delivered by Moore, in 1887, after Prewitt's death, to his heirs.

On these facts, the court charged the jury, on request, that they must find for the defendant, if they believed the evidence. The plaintiff excepted to this charge, and he here assigns it as error.

J. B. MOORE, and W. P. CHITWOOD, for appellants.—(1.) The deed executed by Mrs. Ashford to Richard Prewitt, and delivered in escrow, took effect and became operative on the

[Prewitt v. Ashford.]

11th October, 1881, when the event happened on which it was to take effect.—1 Dev. Deeds, §§ 319, 323, 327–9; 2 Whart. Contracts, § 679; Bish. Contracts, § 766; Tied. Real Property, § 815; 3 Washb. Real Property, 268, 272. (2.) The title acquired by Prewitt under this deed passed, *eo instanti*, to his wife, by virtue of the covenants of warranty in his conveyance to her.—*Parker v. Marks*, 82 Ala. 548; 85 Ala. 562; 10 Ala. 504; 21 Ala. 72; 61 Ala. 108; 69 Ala. 140. (3.) Neither the decree of Chancellor Turner in favor of Mrs. Ashford, nor the subsequent decree on the bill filed by Prewitt, seeking to revise and set aside the former decree, concludes or affects the rights acquired under this deed.—Freeman on Judgments, §§ 244, 253, 256–7; 72 Ala. 368; 66 Ala. 129. (4.) The decree of Chancellor Turner conveyed to Mrs. Ashford only an equitable title, which can not prevail at law.—Code, 1876, § 3899; 3 Pom. Eq. § 1317; 28 Conn. 593; 21 U. S. Digest, 205, §§ 233–4.

D. D. SHELBY, *contra*, cited, *May v. Coleman*, 84 Ala. 326; *Foster v. Woods*, 6 John, Ch. 87; *Lyon v. Brooks*, 2 Edw. 110; *Hotes v. Irvine*, 13 Ohio St. 285; 1 Barb. Ch. Pr. 140; Story's Eq. Plead. § 903; Freeman on Judgments, §§ 249, 485.

SOMERVILLE, J.—The action is one of statutory ejectment. The court, on the trial below, gave the general affirmative charge to find for the defendant, and the verdict of the jury was accordingly so rendered.

The evidence in behalf of the plaintiff, Prewitt, who is the appellant here, made out a *prima facie* case of title in him, such as would authorize a recovery, unless his case was overthrown by the countevailing evidence of the defendant, Mrs. Ashford. It was as follows: (1) A *warranty* deed from Richard Prewitt to Josephine Prewitt, dated April 27th, 1866. (2) A deed from Josephine Prewitt to the plaintiff, W. V. Prewitt, dated February 6th, 1883. (3) The fact of uninterrupted possession under these deeds; from April, 1866, to March 3d, 1888, which was within a few weeks of the time the present suit was brought. (4) A quit-claim deed from Caroline Ashford to Richard Prewitt, the original owner, dated November 23d, 1875. This last deed was delivered as an *escrow* to J. B. Moore, to be by him delivered to the grantee, in the event of the affirmance by the Supreme Court of the decree rendered in the case of *Lile v. Prewitt*, involving litigation concerning the lands in controversy. This event happened October 11th, 1881. Richard Prewitt died November 23d, 1882, and the deed was delivered to his heirs in the year 1887.

It is not denied that this makes a *prima facie* case for the plaintiff. It is sought, however, to destroy the force of this chain of title, by showing that on March 12, 1877—while the escrow deed of Mrs. Ashford was in the hands of Moore, awaiting delivery, and before the affirmance of the judgment in *Lile v. Prewitt*, in October, 1881, the event on which it was to be delivered—the *legal* title to the land was transferred from Richard Prewitt and his wife, Josephine Prewitt, to Mrs. Ashford, the defendant, by decree of the Chancery Court of Lawrence county. To show this, a decree of that court is introduced in evidence, rendered March 12, 1877, and affirmed on appeal to this court in the year 1879, which purports to accomplish this result. On a bill filed by Mrs. Ashford against said Richard Prewitt and wife, and others, claiming an equity in said lands by reason of the alleged fact that her husband, Thomas H. Ashford, had bought and paid for them with money belonging to the complainant's statutory separate estate, this equity was established, and a decree rendered declaring that "the legal and equitable title in and to" said lands "be, and the same are [is] hereby, divested out of the defendants in said cause, and are [is] vested absolutely in said complainant, Mrs. Ashford."

It is further contended by the defendant, that this title thus acquired by Mrs. Ashford in March, 1877, did not pass to Richard Prewitt, or his heirs, under the escrow deed executed in November, 1875, and delivered in 1887. The contention is, that this decree was *res adjudicata* as to the title in question, because the escrow deed was a part of a compromise between the parties litigant, made *pendente lite*, and that it should have been brought to the attention of the Chancery Court by a supplementary answer, in accordance with the general rule declared in *May v. Coleman*, 84 Ala. 325, as applicable where a pending suit is compromised.

It is manifest, then, in view of this state of facts, that the plaintiff's title must prevail in either of two cases : (1) if the decree of March, 1877, did *not* in fact operate to divest the *legal* title out of Richard Prewitt, and *proprio vigore* transfer it to Mrs. Ashford ; or (2) if it *did* so divest and transfer it, and nevertheless the escrow deed from her to Richard Prewitt operated, on delivery, to relate back so as to vest such title in him, and this title passed under his warranty deed of April, 1866, *eo instanti*, to Mrs. Prewitt, and thence by her deed of November, 1875, to the plaintiff. The plaintiff insists on each of these contentions ; and we repeat, that if *either* of them be correct, he was entitled to a verdict on the evidence contained in the record.

[Prewitt v. Ashford.]

As to the *first* proposition. The chancery decree of March, 1877, did not, in our opinion, operate to vest the *legal* title of the lands in Mrs. Ashford, although it imports in express terms to do so. The reason is, that a Chancery Court, *apart from* the power conferred by *statute*, possesses no jurisdictional authority to divest by mere decree a title out of one party litigant, and vest it in another. A decree was not itself a legal title, and never operated *proprio vigore* to vest or divest title, according to the original principles of equity jurisprudence. It operated only *in personam* on the parties, and never *in rem* on the subject-matter in controversy. This rule is well settled.—1 Pom. Eq. Jur. §§ 135, 170, 428; 3 *Ib.* § 1317.

The statute 'recognizes only two modes in which a decree may divest title out of one party, and vest it in another, in cases of conveyance, release, or acquittance. (1.) Where the chancellor decrees that the party shall convey, release or acquit, by a time specified in his decree, and he fails to do so ; in this event, "such decree operates in all respects as fully as if the conveyance, release, or acquittance, was made." (2.) Where such decree has been made ordering a conveyance, &c., and there is a default in its execution, the chancellor may then decree that the same shall "be executed by the register, or a commissioner, in the name of the party;" and "when so executed," it is declared to be "as valid in all respects as if issued by the party."—Code, 1886, § 3595.

The chancellor did not pursue either of these statutory powers in the decree of March 12th, 1877, under consideration. Having no jurisdiction to divest or transfer title, except under the authority conferred by the statute, and having failed to pursue that authority, it follows that his decree was inoperative for this purpose. Mrs. Ashford never acquired more than an equity under the decree, and that equity can avail nothing as a defense to this suit, which involves only the legal title.

As to the *second* proposition. Even if we should hold, that, contrary to the above view, Mrs. Ashford did acquire the legal title to the land by virtue of the chancellor's decree, we are further of opinion that she parted with this title by virtue of the delivery of the escrow deed of November 23d, 1875, executed to Richard Prewitt, and deposited with J. B. Moore, to be by him delivered to the grantee, on the affirmance by this court of the decree in *Lile v. Prewitt.* That contingency did happen, as we have stated, in October, 1881, and the deed was afterwards delivered to the grantee's heirs.

The established rule in reference to an escrow of this nature is, that when the condition upon which it is to be delivered is

performed, or happens, if necessary to protect the intervening rights of the grantee, the instrument will be held to relate back, and take back *nunc pro tunc*, from its first delivery as an escrow.—*Shirley v. Ayres*, 45 Amer. Dec. 546; *Foster v. Mansfield*, 37 *Ib.* 154; *Hatch v. Hatch*, 6 *Ib.* 67; Tiedeman on Real Prop., § 815. This principle especially applies where either of the parties to the deed dies before the condition is performed, or before final delivery, and the condition is afterwards performed; or the delivery consummated.—*Ruggles v. Lawson*, 7 Amer. Dec. 375; Shep. Touch. 59; *Foster v. Mansfield*, 37 Amer. Dec. 154. And, moreover, where the grantee dies after the first delivery, and before the final one, the trustee holding it may deliver it to the grantee's heirs, and it will be held, ordinarily, to have taken effect in the ancestor, so as to transmute title through him to the heirs by inheritance, where nothing intervenes to prevent.—*Stone v. Duval*, 77 Ill. 475; *Jones v. Jones*, 16 Amer. Dec. 40-41, *note.*

The heirs here acquired no title, because it was cut off by the warranty deed of Richard Prewitt to Josephine Prewitt, and passed from the latter by her deed to the plaintiff, although it was a quit-claim. The legal effect of a deed, with covenants of warranty, is to pass *eo instanti* any title subsequently acquired by the grantor, and, where there is no intervening equity, it may relate back to the time when the conveyance was executed.—*Parker v. Marks*, 82 Ala. 548; *Bone v. Lansden*, 85 Ala. 562; *Chapman v. Abrams*, 61 Ala. 108.

And while a quit-claim will not estop the maker from afterwards acquiring and holding an adverse interest in the land conveyed, yet such a deed will convey such of the covenants of the former grantor as run with the land; and the grantee in a quit-claim deed will be entitled to such further title or estate as may ensue, at any time, to the grantee of such former grantor, by virtue of such covenants.—*Johnson v. Williams*, 1 Amer. St. Rep. 243.

This effect of the final delivery of the escrow deed was not, in our opinion, interrupted by the decree of March 12th, 1877. Nor did that decree preclude Richard Prewitt from claiming the benefit of the title acquired under this deed. This title was not involved in the issue of that, or any other suit between the parties, or their privies, prior to the present one. Its very existence was dependent on an extrinsic event, which might never have happened, and in fact did not happen before the suit, in which that decree was rendered, was finally concluded, viz., the affirmance of a decree by this court in another case, which did not occur until October, 1881. The case does not fall within the principle declared in *May v. Coleman*, 84 Ala.

[McCalley v. Otey.]

325, which was the compromise of a right existing at the time, not, like the one here under consideration, a compromise where no right at all might ever accrue, and if it did, even then in no event except upon a contingency having no connection whatever with the pending suit.

The proceedings in the case of *Heflin v. Ashford*, 85 Ala. 125, which appear in this record, clearly involved no issue which affect this case, under the principles above declared.

It follows from what we have said, that the court erred in the charge given, and in admitting in evidence the proceedings of the chancery suits to which objection was taken by appellant.

The plaintiff, on the facts proved, would have been entitled to the general affirmative charge in his favor.

Reversed and remanded.