# Jones *v.* Woodstock Iron Co.

*Bill in Equity by Purchaser at Sale under Probate Decree, for Injunction of Actions by Decedent's Heirs at Law.*

| | |
|---|---|
| 95 | 551 |
| 98 | 191 |
| 95 | 551 |
| 99 | 46 |
| 95 | 551 |
| 102 | 272 |
| 95 | 551 |
| 134 | 652 |

1. *Petition by administrator for sale of lands; averment of ownership.* In a petition by an administrator for an order to sell lands for equitable division, an averment that "the lands belonging to the estate of said decedent are the following," is a sufficient averment of ownership to support the jurisdiction of the court to grant an order of sale.

2. *Conclusiveness of order of sale.*—If the administrator's petition, though demurrable, contains the necessary jurisdictional averments, its defects are not available on collateral attack of the sale, the order of sale being conclusive.

3. *What lands may be sold.*—The statute authorizes the sale of an equitable interest in lands, as where the decedent had paid the purchase-money, or a part of it, but had not received a conveyance; but, if the administrator pays the balance of the unpaid purchase-money, and takes a conveyance to the heirs, he can not afterwards have the lands sold under the statutory jurisdiction of the court.

4. *Conclusiveness of confirmed sale* —When a sale of lands has been made under a proper decree, reported to the court and confirmed; the

purchase-money reported paid, and a conveyance ordered and made to the purchaser, its validity can not be assailed by the heirs on the ground that the purchase-money was not in fact paid, or that the sale was not made as directed.

5. *Estoppel against adult heirs.*—If the adult heirs, parties to the proceedings, allow the sale to be confirmed without objection, and the administrator to charge himself, on final settlement, with the purchase-money, decrees being rendered against him in their favor for their respective portions, they are estopped from afterwards assailing the validity of the sale; but the estoppel does not extend to infants, although represented by a guardian *ad litem*, if they have done nothing after attaining their majority to ratify the sale.

6. *Amendment of decree nunc pro tunc.*—If the order of sale refers to the petition as asking a sale for equitable division among the heirs, and to the depositions in support of it as proving that a sale is necessary for the payment of debts, this is a mere clerical misprision, which is amendable by the record; and the amendment may be made at a subsequent term, *nunc pro tunc*, without notice to the heirs.

7. *Decree for divestiture of title.*—Under a bill which seeks to divest the legal title to land out of the defendants and vest it in the complainant, the court may directly so order, adjudge and decree, without requiring the execution of a deed by the defendant, the register, or a special commissioner. (*Prewitt . v. Ashford*, 90 Ala. 264, overruled, except as to proceedings instituted on its authority.)

APPEAL from the City Court of Anniston, in equity.

Heard before the Hon. B. F. CASSADY.

The bill in this case was filed on the 19th November, 1889, by the Woodstock Iron Company and the Anniston City Land Company, two private corporations, against Alice C. Jones, Walter L. Jones and others, as heirs at law of James M. Jones, deceased, and against A. H. Jones, who was not alleged to hold under them, or to have any connection with them; and sought to enjoin two actions of ejectment, one instituted by said heirs, and the other by said A. H. Jones, and to have the legal title to the lands sued for divested out of the defendants and vested in complainants. The complainants claimed the lands as sub-purchasers under a sale made by the administrator of said James M. Jones, under an order and decree of the Probate Court, and the defendants assailed the validity of the order and of the sale.

The following are the material facts shown by the record: James M. Jones died, intestate, on the 16th January, 1875, being at the time in possession of the lands, which he had bought from one E. C. Brock, who had bought from E. L. Woodward. Jones paid part of the purchase-money to Brock, assumed to pay the balance due to Woodward, and took an assignment of Woodward's bond for title; but he died without having paid the balance, and without a conveyance of the land. Letters of administration on the estate of said Jones were granted, on the 4th April, 1876, to W. H.

Hames, his son-in-law, who afterwards paid, out of the assets of the estate, the balance of the purchase-money due to Woodward, and procured his conveyance of the lands to the children of Jones, which was dated May 17th, 1877. On the 4th September, 1879, the administrator filed his petition in the Probate Court, alleging "that the lands belonging to the estate of the decedent are the following," describing them, and that they "can not be equitably divided among said heirs without a sale," and therefore prayed an order of sale. On the filing of this aplication, the court appointed a day to hear it, ordered notice to the adult heirs, and appointed a guardian *ad litem* to represent the minors. Notice was served on the adult heirs, and the guardian *ad litem* filed a formal answer for the minors. The administrator filed interrogatories to W. H. Forney and E. L. Woodward, each of whom testified that the lands could not be fairly divided without a sale, and that a sale would be beneficial to the heirs. The interrogatories to the witnesses and their depositions were filed on the 13th November, 1879, and on the same day the court granted an order of sale, reciting therein that the administrator had filed his petition asking a sale "on the ground that said real estate can not be fairly, equitably and beneficially divided without a sale thereof;" that notice had been issued to the heirs, and a guardian *ad litem* had been appointed for the minors; "and it appearing to the satisfaction of the court, by the oaths of E. L. Woodward and W. H. Forney, disinterested witnesses, whose testimony has been taken by deposition as in chancery proceedings, and which has been filed of record in this court, that said lands," describing them, "should be sold for the purpose of paying the debts of said estate; it is therefore ordered," &c., "that said application be granted, and said administrator is ordered to sell said lands at public outcry, on the following terms: one half cash, and the remaing half on a credit of twelve months, with note and two good and solvent sureties.

The administrator reported, June 21st, 1881, that he had offered the land for sale under the order, on the day named in the published notice, but had no bidders; "that said land is yet undisposed of, and is still the property of said estate; that there are still some small balances due from said estate, and a final settlement of said estate can not be had without a sale of said property. Again, four of the heirs of said estate are over the age of twenty-one years, and are anxious for their share of the estate, and, as has been shown by proof under former petition, said lands can not be equally divided

among said heirs without a sale thereof. Therefore your petitioner asks that an order be again granted by your hon. court authorizing him to sell the land mentioned in his former petition, at such time and place, and for cash, as may seem right and beneficial for the interest of said heirs." On the same day the court made an order of sale, which recited the allegations of this petition, and that the court "is satisfied that the allegations thereof are true, and authorized the administrator to re-advertise and sell the lands, for cash, for the purpose of paying off some indebtedness against said estate, and for division among the heirs and distributees thereof." On the 30th August, 1881, the administrator made his report of the sale, and asked its confirmation; giving the name of Joseph A. Jones, one of the heirs, as the purchaser, at the price of $1,749.60, and stating that he was ready to comply with the terms of the sale. On the filing of this petition, the court made an order appointing the 9th September for the hearing of it, "and giving all parties interested in said estate until that day to come into court and object or except to said report and sale." The record does not show or recite notice to the parties of this order, but the sale was confirmed on the 9th September, 1881, and the administrator was ordered to execute a deed to the purchaser; the order reciting the appearance of the administrator only, and that the court considered "all the evidence connected with said sale."

The facts above stated were shown by a transcript of the record of the proceedings had in the Probate Court, which was made an exhibit to the bill; and the transcript also showed that, on the 29th October, 1889, after the commencement of the two actions at law, the administrator filed his petition alleging the mistake in the last order of sale, as to the testimony of Forney and Woodward, and asking an amendment of the decree *nunc pro tunc* by a correction of the mistake; and the court made the amendment on the same day, reciting the facts.

The bill alleged that the "proceeds of the sale of said lands were regularly and properly distributed by the administrator among the heirs of said estate, and were received and appropriated by said heirs;" but this allegation was denied by the heirs, and they alleged that the administrator had never made a final settlement. It was shown by a transcript from the records of the Probate Court that the administrator had filed his accounts and vouchers for a final settlement on the 20th June, 1881, but the settlement was continued at his instance, and changed to an annual settle-

ment; that in his account as filed, which was sworn to on the 21st May, 1881, was an entry of debit in these words : "Debits brought forward, $1,767.60 ; to which add proceeds of sale of Anniston land sold July 21st, 1881, payment made *Sept.* 9th, 1881, from private sale of said land sold at public sale July 21st, 1881, $2,000 ; making amount received to date, $3,767.60 ;" leaving balance for distribution, $1,800, or $300 to each heir. The court passed the account as stated, and rendered a decree against the administrator, in favor of each of the heirs and distributees, for $300. The probate judge certified that this was the last settlement shown by the records of his court, and the administrator himself testified that he had never made any subsequent settlement; but he claimed that he had settled with J. A. Jones for the interests which he represented, had himself retained his wife's distributive share, and also the shares of the two minors, who were then living with him, and who had no guardian ; and that they were indebted to him, on that account, more than $300 each.

The defendants also denied, in their answer, that there was ever any public sale of the lands by the administrator, and alleged that they were sold by private arrangement between the administrator, Joseph A. Jones, and an agent of the Woodstock Iron Company. In reference to this matter the administrator testified, and other testimony was to the same effect, that it was agreed between him and Joseph A. Jones, who acted for the other adult heirs, prior to the day appointed for the sale under the first order, that the land should be bought in by the estate, unless it brought $2,000 ; that the highest bid at the sale was about $1,740 ; that thereupon one Edmonson, acting for said Joseph A. Jones, bid $1,749.60, and it was knocked down to said Jones as the purchaser, at that price ; that said Jones, a few days or weeks afterwards, came to the administrator, and represented to him that he had found a purchaser for the land at the price of $2,000 ; that he came to the administrator's office on the 9th September, 1881, accompanied by Jno. M. Caldwell, who, as the defendants insisted, was acting as the agent of the Woodstock Iron Company ; that Caldwell then paid the administrator $2,000, and the latter executed a deed to Joseph A. Jones as the purchaser at the sale, who at once executed a deed to said Caldwell. The administrator's deed to Jones recited that the sale was made on the 26th July, 1881, under the order of sale granted on the 21st June, 1881 ; that said J. A. Jones was the purchaser at the sale, at a price aggregating $1,759.60 ; that the sale had

been reported to the court, and confirmed; that Jones had paid the purchase-money, the payment had been reported to the court, and the administrater had been ordered to execute a conveyance to him as the purchaser; and the deed conveyed to said Jones all the right, title and interest of the estate in the lands. The deed of said Joseph A. Jones to Caldwell, also dated September 9th, 1881, recited the payment of $2,000 as its consideration, and contained no warranties. Caldwell's deed to the Woodstock Iron Company was dated October 3d, 1881. The administrator testified that he received the $2,000 from Caldwell, and charged himself with the amount in his account, as above stated, in order that the estate might get the benefit of the advanced price, and considered that he had made the sale under the order of the court.

The heirs filed a joint demurrer to the bill for want of equity, and a joint answer setting up the the facts above stated in avoidance of the sale; and they also filed a cross-bill, offering to refund whatever amount of the purchase-money they had received, or were chargeable with, after deducting the rents and profits which the complainants had received, allowing them taxes paid and the value of improvements erected on the lands, and that the decree of sale be vacated as a cloud on their title. A. H. Jones joined in the demurrer and answer of the heirs, but did not show how he was connected with their title.

The court overruled the demurrers to the bill, and dismissed the cross-bill; and on final hearing, on pleadings and proof, rendered a decree for the complainants, declaring the legal title to the lands divested out of the defendants and vested in the complainants, and perpetually enjoining the actions at law. The defendants jointly appeal, and assign each part of this decree as error; and there are separate assignments of error by Alice Jones, Walter Jones, and Joseph A. Jones.

WATTS & SON, PARSONS & DARBY, GORDON MACDONALD, and KELLY & SMITH, for appellants.—(1.) The sale was void, whether made under the first or the second petition filed by the administrator. The first petition did not contain the necessary jurisdictional averments, because it did not allege or show that the decedent was seized and possessed of the lands at the time of his death, nor that he then had an estate in them which was subject to sale.—*Pettit v. Pettit*, 32 Ala. 288; *McCain v. McCain*, 12 Ala. 510; *Mounger v. Burks*, 17 Ala .48; *Bishop v. Blair*, 36 Ala. 80. That decree

was void for the further reason, that it did not conform to the petition, but ordered a sale for the payment of debts. *Tyson v. Brown*, 64 Ala. 244. If the sale was made under the second order, it was equally void, because the heirs had no notice of that petition, and because no proof was taken in support of it. The amendment *nunc pro tunc* was made without notice to the heirs, and it can not affect their rights. 72 Ala. 391; 54 Ala. 445. (2.) But the proof shows that the court had no power to sell the land under any petition, because the title had been conveyed to the heirs at the instance of the administrator.—*McCain v. McCain*, 12 Ala. 510; *Mounger v. Burks*, 17 Ala. 48; *McKay v. Broad*, 70 Ala. 380. The proof shows, also, that the sale was not made under either order, nor even at public outcry, but was a private arrangement effected between the administrator, Joseph A. Jones and Caldwell; and it was void for this reason.—*Lee v. Lee*, 55 Ala. 590; *James v. James*, 55 Ala. 525; 111 U. S. 640. (3.) A purchaser at a void judicial sale does not acquire any title, but only a right, at most, to compel his adversary to elect whether he will ratify or repudiate the sale on equitable terms.—Freeman on Judicial Sales, §§ 53, 55; *Cox v. Holcombe*, 87 Ala. 592; *Woodstock Iron Co. v. Fullenwider*, 87 Ala. 584; *Scott v. Dunn*, 30 Amer. Dec. 174, note; *Perry v. Adams*, 2 Amer. St. 51, note; *McGee v. Wallis*, 34 Amer. Rep. 584; 46 Geo. 101. (4.) No estoppel is shown against any of the heirs, except, possibly, Joseph A. Jones, who actively participated in the sale, and received his portion of the purchase-money. (5.) No ground of relief is alleged or proved against A. H. Jones, and the bill ought to have been dismissed as to him. (6.) The decree is erroneous in attempting to divest the title.—*Prewitt v. Ashford*, 90 Ala. 300.

John B. Knox, and Caldwell & Johnston, *contra*.—(1.) The petition may have been demurrable, but it is sufficient on collateral attack.—3 Brick. Digest, 467, §§ 182–3; Code, §§ 2105–14, and citations. (2.) Jurisdiction having attached, mere errors or irregularities will not avoid the sale on collateral attack.—3 Brick. Digest, 466, §§ 168-9. (3.) The mistake in the decree of sale, about selling for the payment of debts, is self-correcting, and notice of the amendment *nunc pro tunc* was not necessary.—*Nabors v. Meredith*, 67 Ala. 333; 3 Brick. Digest, 577. (4.) It can not be denied that James M. Jones, at the time of his death, had an equitable interest in the land, which was subject to sale under a decree of the Probate Court.—*Rice v. Drennen*, 75 Ala. 338. The legal

title afterwards acquired by the heirs did not disturb this interest in the estate, nor deprive the court of power to sell it. The sale was made for the benefit of the heirs, and they were parties to the proceeding. The decree recites that the land belonged to the estate, and the recital is conclusive on the heirs. The decree can only be impeached for fraud. *Mervine v. Parker*, 18 Ala. 241; *Kellam v. Richards*, 56 Ala. 238; *Whitlow. v. Echols*, 78 Ala. 206; *Landford v. Dunklin*, 71 Ala. 594; *Cornett v. Williams*, 20 Wall. 226. (5.) If the minor heirs are entitled to any relief, they can not have it under the pleadings as now presented.

COLEMAN, J.—The bill was filed to enjoin suits in ejectment, commenced by the heirs of James M. Jones, to recover certain lands which were sold under an order of the Probate Court; and also to have the legal title to the lands sued for divested out of said heirs, and invested in complainants. The facts sufficiently appear in the statement of the facts of the case, in the further progress of this opinion.

The petition to the Probate Court of Calhoun county, in its allegations for the sale of the lands for distribution, sufficiently complied with the statute to give jurisdiction to the court.—Code of 1886, § 2106; Code of 1876, §§ 2449, 2450. Citations to the parties in interest regularly issued, and a guardian *ad litem*, who accepted the appointment to represent the minor heirs, appeared and represented them in the proceedings in the Probate Court to have the lands sold for distribution.

Even though a petition be subject to demurrer, or a judgment on the demurrer be reversible for error on appeal; yet, if the petition sufficiently alleges all the necessary jurisdictional facts, and final judgment is rendered thereon, from which no appeal is taken, such irregularities or reversible errors can not avail when the judgment is collaterally assailed.—*Whitlow v. Echols*, 78 Ala. 208; *Pollard v. Hanrick*, 74 Ala. 337; 3 Brick. Digest, 467, §§ 182, 183, 185.

The Probate Court has jurisdiction to sell for division lands in which the decedent held only an equitable interest. *Pettit v. Pettit*, 32 Ala. 288; *Vaughan v. Holmes*, 22 Ala. 595; *Rice v. Drennen*, 75 Ala. 338; *Jennings v. Jenkins*, 10 Ala. 285; *Duval v. McClosky*, 1 Ala. 708. The statute which authorizes the Probate Court to sell land for division is as follows: "Lands of an estate may be sold by order of the Probate Court having jurisdiction of the estate, when the same can not be equitably divided among the heirs or devisees."—Code, § 2105. A difficulty arises as to what con-

[Jones v. Woodstock Iron Co.]

stitutes "lands of an estate," within the meaning of the statute. The preceding section, in regard to the sale of lands for the payment of debts, uses the same broad term, "land." As we have seen, the statute includes a mere equity in lands; and in the case of *Vaughan v. Holmes*, 22 Ala., *supra*, it was held that a purchaser of lands, who died before paying the entire purchase-money, had such inchoate interest or equity as was subject to sale under the statute by decree of the Probate Court.

When a sale of lands for distribution has been made in pursuance of an order of the court having jurisdiction of the question, and on proof taken as required by the statutes, and the sale and payment of the purchase-money regularly reported to the court, and confirmed by a decree of the court, and a conveyance of the title is executed to the purchaser, in pursuance to an order of the court to that effect, no fraud being alleged, the validity of the sale and the title of the purchaser can not be collaterally assailed by showing that the purchase-money was not paid as reported, or that the sale in fact was not made as directed by the court. These questions are judicially ascertained and adjudicated by the judgment of confirmation. It makes no difference that the Probate Court is of limited jurisdiction. After it has properly acquired jurisdiction, its judgments have the same extent, and are as conclusive *quoad rem* and the parties properly before it, as judgments of courts of general jurisdiction. A purchaser at such sale is only bound to see that the court had jurisdiction.— *Wyman v. Campbell*, 6 Ala. 219; *Whitlow v. Echols*, 78 Ala. 210; *Farley v. Dunklin*, 76 Ala. 530; *Kellam v. Richards*, 56 Ala. 240; *Stevenson v. Murray*, 87 Ala. 442; *Cantalou v. Whitley*, 85 Ala. 248; *Goodwin v. Sims*, 86 Ala. 102; *Morgan v. Farned*, 83 Ala. 367.

These general propositions of law are subject to the qualification, that the statute which confers the power on the Probate Court to sell lands for distribution extends only to the title or estate as it descended, and not to an after-acquired title or interest different and distinct from that which the intestate had at the time of his death. In support of this qualification of the general principle, the following authorities are cited: *Johnson v. Collins*, 12 Ala. 336; *Pettit v. Pettit*, 32 Ala. 288, 305; *Burns v. Hamilton*, 33 Ala. 213; *Cothran v. McCoy*, *Ib.* 65; *Bishop v. Blair*, 36 Ala. 380; *McCain v. McCain*, 12 Ala. 510; *McKay v. Broad*, 70 Ala. 380; *Whorton v. Marange*, 62 Ala. 207; *Mounger v. Burks*, 17 Ala. 50; *Rice v. Drennen*, 75 Ala. 338.

The citations from 36 Ala., 33 Ala., 32 Ala., and *Johnson v. Collins*, 12 Ala. 336, are not directly in point, though often quoted to the proposition. In the case of *Pettit v. Pettit*, 32 Ala.; *supra*, the conclusion of the court rested upon the fact that the contract of the intestate for the purchase of land was void as contravening public policy, and in violation of a statute of the United States, and this defect was apparent upon the petition to the Probate Court for the sale of the lands.

In the case of *Johnson v. Collins*, 12 Ala., the conclusion of the court was, that the intestate had no inheritable or devisable interest in the lands, either legal or equitable, and consequently there was nothing upon which the order of the court could operate; that under the pre-emption law, the heir, by virtue of the statute, was entitled to perfect the inchoate pre-emption right of the settler, and not the administrator of the intestate. The other case cited from 33 Ala. merely re-affirmed the same ruling.

The proposition, however, is broadly stated and declared in *McCain v. McCain*, 12 Ala. 510. In this case, the intestate had purchased the land, and died without making payment of the purchase-money, and before receiving the title. His administrator paid the unpaid balance of the purchase-money, and titles were made to the heirs of the decedent. The court held the power to sell lands for distribution "is only given when the land remains in the same condition as to the title as it was at the decease of the intestate, but has no power when the title of the ancestor has been divested and made to the heirs."

The facts in the case of *Bishop v. Blair, supra*, show that Mrs. Bishop, with funds of her husband's estate, entered certain lands. Under a petition by her, as executrix, to the Probate Court, these lands were represented as belonging to the estate of her deceased husband, and as such were decreed to be sold for division. It was held that the court had no jurisdiction to sell the lands for distribution, and the order of the court for this purpose was null and void. The rule has been recognized without a single departure to the present time, since it was first declared in *McCain v. McCain*, 12 Ala., *supra*. Whatever hardships may arise, it is now a rule of property too firmly fixed to be departed from, without legislation.

So far as the adult heirs are concerned, we are firmly convinced that they are estopped from asserting any claim hostile to that of the purchasers. These adult heirs, with a full knowledge of all the facts, permitted the sale of

the lands to be reported to the court, and the sale confirmed by the decree of the court. They were parties to the settlement by the administrator, in which he charged himself with the proceeds of the sale of the land, and decrees were rendered against him for their proportionate share of the purchase-money. The principle is not unlike that which was applied in the case of *Bell v. Craig*, 52 Ala. 216, in which it was held, that although the sale of the lands was void, the settlement by the administrator and decree against him estopped the heirs from questioning the validity of the order under which the sale was made. See, also, *Whitehead v. Jones*, 56 Ala. 156; *Bland v. Bowie*, 53 Ala. 161; *Pickens v. Yarborough*, 30 Ala. 410; *Robertson v. Bradford*, 73 Ala. 118; *Bishop v. Blair*, 36 Ala. 83; *Rice v. Drennen*, 75 Ala. 338; *Nunn v. Norris*, 58 Ala. 202.

The decree of the court ordering the sale of the land was rendered in the year 1879; the sale made in June, 1881, reported and regularly confirmed in September, 1881; and the purchasers have been in possession ever since, have erected valuable improvements thereon, and their title never questioned until January, 1888, when suit in ejectment was instituted by the two minor heirs to recover the land. It can not be tolerated in a court of equity that the adult heirs can, at this late day, repudiate the sale, and recover back the land. Their claim constitutes a cloud upon the title of the complainants, which entitles them to relief in a court of equity. Although the minor heirs, Alice and Walter Jones, waited several years after attaining their majority before commencing legal proceedings in ejectment to recover their interest, it does not appear from the record, or in proof, that personal knowledge of the proceedings in the Probate Court for the sale of the land, and of the final settlement by the administrator, and the decree in their favor against him for the purchase-money, was brought home to them, or that they have ratified the settlement; or done any act which would estop them from asserting their claim. Complainants seem to have acted in good faith in their purchase, and in making improvements thereon, and the equities of the parties as to rents, or in case of partition, if such proceedings should be instituted, can be fully adjusted upon proper pleadings in a court of equity.

The answer, cross-bill and demurrers of the minor heirs are filed jointly with the adult heirs, who are not entitled to relief. The pleadings should be amended, if desired, so as to separate the rights and interest of the minor heirs from the adult heirs.

[Jones v. Woodstock Iron Co.]

If the decree of the court upon the petition of the administrator for the sale of the lands was not otherwise invalid, the amendment *nunc pro tunc* was properly made. The petition to the Probate Court sought to have the lands sold for an equitable division. The citation to the heirs so stated. Proof was taken by deposition to show that the lands could not be divided without a sale, and which depositions were ordered to be filed as a part of the record of the proceedings. The decree itself provides that the petition be granted. It is perfectly evident that the recital in the judgment, that the lands be sold for the purpose of paying the debts, was a mere clerical mistake, capable of correction *nunc pro tunc*, if indeed, when considered in connection with all the *quasi*-record memoranda and the record proper, it did not correct itself. The proceedings being *in rem*, as between the administrator and heirs, notice to the heirs of the motion to amend *nunc pro tunc* was not necessary.—*Farley v. Dunklin*, 76 Ala. 532; *Goodwin v. Sims*, 86 Ala. 102; *Nabors v. Meredith*, 67 Ala. 333; *Whorley v. M. & C. R. R. Co.*, 72 Ala. 22.

The record nowhere shows how the rights of A. H. Jones are involved in this case, and it does nor appear upon what grounds the injunction was issued and made perpetual as against him.

It is insisted that the decree of the equity court is erroneous, in that it undertook to "invest the legal title" in the complainants. The case of *Prewitt v. Ashford*, 90 Ala. 300, supports the contention. We would correct the decree in this respect, if we deemed it necessary. A deed made in pursuance of a decree of a court of equity, executed by any other person than the legal owner, *proprio vigore* would not convey the legal title. Such an instrument derives its entire strength from the decree. It is the decree at last, and not the instrument itself, which makes it effectual to convey or invest the legal title. Courts of equity in this State have long pursued the practice of investing the legal title by its decrees. This practice was not only sanctioned but expressly authorized by the decision of the Supreme Court of this State. As far back as 19 Ala. 481, 490, *Brewer v. Brewer*, DARGAN, C. J. proceeding to render "such decree *as the court below should have rendered*, ordered, adjudged and decreed, that Thos. J. Brewer *be invested* with the legal title," &c. This early decision has become a rule of property, and to hold otherwise now would upset a great many legal titles. We adhere to the old rule, and so far as *Prewitt v. Ashford*, *supra*, conflicts

[Bruce v. Bruce.]

with it, the latter is hereby qualified.  Either course would be efficient to invest a legal title.  That no injustice may be done to litigants who, under the influence of the decision made in the case of *Prewitt v. Ashford, supra,* have instituted proceedings to procure the legal title, we declare and hold that as to such cases the case of *Prewitt v. Ashford* operates as a rule of property.—*Furrior v. New England Mortg. Sec. Co.,* 92 Ala. 176.

The decree of the City Court is affirmed, so far as it granted relief to complainants against the adult heirs of James M. Jones ; and reversed so far as relief was granted against Walter Jones and Alice Jones, who were minor heirs at the time of the sale and settlement, and against A. H. Jones.

The judgment of this court reversing the decree rendered against the minor heirs and A. H. Jones is not to be construed as dissolving the temporary injunction enjoining the prosecution of the ejectment suits, but as to such matter the question is left open for the consideration of the lower court, if the pleadings should be amended, and other proof offered, in the further progress of the cause.

One half of the costs of the appeal must be paid by the adult heirs of James M. Jones, and the other half by the appellees.

Affirmed in part, and reversed in part.