Bell Estate.

4

Argued April 15, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*John S. Simpson,* with him *Fisher, Ruddock & Simpson,* for appellants.

*Edwin M. Clark,* for appellee.

OPINION BY DITHRICH, J., July 17, 1947:

Where a promissory note is delivered in escrow and by the terms of the written escrow instructions the note is to be delivered to the payee after the death of the maker, does the fact that the payee predeceased the maker prevent a valid delivery? That is the sole question involved in this appeal. The court below answered the question in the affirmative and this appeal was then brought by the heirs of the payee.

Martha J. Bell, decedent's first wife, died in 1917 and devised certain real estate to decedent for life, with remainder to Clarence Bell and Mabel McHenry (now Burkett), the children of Martha J. and George M. Bell. Under the terms of a family settlement, Clarence Bell conveyed his interest to his sister, and in consideration of the conveyance was to receive a promissory note from

decedent. On December 15, 1919, the note dated December 9 and payable one day after the death of George M. Bell, the maker, was delivered in escrow by decedent to D. R. Tomb, Esquire, a member of the bar of Indiana County, with instructions for delivery to Clarence Bell. The escrow receipt recited that the note was to be held by the attorney during the lifetime of the said George M. Bell "and at his death to be delivered to the said Clarence Bell." Clarence Bell died March 27, 1939, survived by his wife and three children, the appellants herein. George M. Bell died testate March 6, 1944. The escrow holder of the note retained possession of it from the time it was delivered to him until he produced it at the auditor's hearing, where he appeared as executor of the decedent's estate.

Had Clarence Bell been living at the time of the death of George M. Bell, there could be no question that he would be entitled to delivery of the note and that the delivery would take effect as of the time of the first delivery: *Wagoner's Estate,* 174 Pa. 558, 34 A. 114; *Hartman's Estate (No. 2),* 320 Pa. 331, 182 A. 232; *Chambley v. Rumbaugh,* 333 Pa. 319, 5 A. 2d 171; *Rynier Estate,* 347 Pa. 471, 32 A. 2d 736; but the delivery to the payee was not contingent upon the payee's surviving the maker. That, however, appears to be the position erroneously taken by the auditor and the court below, guided by what they thought was indicated in the opinion of the Supreme Court in *Wagoner's Estate,* supra. In that case the decedent executed a bond in favor of his niece and placed it in escrow with a justice of the peace for delivery to the niece after her uncle's death. A few days after the uncle's death, the niece called for the bond, which was a gift to her from her uncle, and the escrow holder delivered it to her. The court held that there was a sufficient delivery to execute the gift to the niece and that the delivery to the niece after the uncle's death took effect by relation from the first delivery. The court then

went on to say, page 565: ". . . the enjoyment of the subject of the trust by the beneficiary could be defeated only on the happening of the one contingency, her death before her uncle's; the subject of it having passed completely out of his control that control could only be resumed by him on the happening of the same contingency; a subsequent event, his survivorship *might*, through the interposition of equity, restore to him the bond, but a change of intention on his part never could." (Emphasis added.)

In our opinion what might have happened in the event of the survivorship of the donor is obiter dictum. It was not necessary to a decision in the case, the niece having survived her uncle. Furthermore, the instructions given with the initial delivery were oral, whereas in the instant case they are written. In that connection it is significant to note that the court said, page 564: "A chancellor on Skiles' evidence as to what was said by the donor to him when the bond was put in his possession, and the declaration of the donor to the donee, would have restrained Skiles from delivering it to either during the lifetime of both; and on the death of the niece first, *might* have ordered its cancellation; but if the uncle died first, would have compelled its delivery to the niece." (Emphasis added.) The discussion as to what might have happened had the niece predeceased her uncle has not been reflected by the courts of this state in any reported case, and it is clearly out of harmony with the decisions of other states. The general rule is stated in 19 Am. Jur. 449, as follows: "Where, after the deposit of a deed in escrow and before the final delivery thereof or the performance of the condition of the escrow agreement, the grantee dies and the condition is thereafter performed, the deed will be treated as relating back to the time of the first delivery in escrow. *Title is vested in the grantee's heirs in such cases and delivery is to be made to them.*" (Emphasis added.)

"This rule [substantially the same as stated in Am. Jur.] has been applied where either of the parties to the instrument dies after it has been deposited as an escrow and before the condition has been performed and final delivery made, whether the death is that of the grantor, or the grantee": 30 C. J. S. 1217, citing *Prewitt v. Ashford*, 7 So. 831, 90 Ala. 294; *Stone v. Duvall*, 77 Ill. 475. Those two cases, together with *Lindley v. Groff*, 37 Minn. 338, 34 N. W. 26, and *Perry v. Perry*, 155 N. Y. S. 954, are cited in the Annotation to 117 A. L. R. 79. No cases holding to the contrary are cited either in Am. Jur. or C. J. S., or in any other text, so far as we have been able to discover. In *Prewitt v. Ashford*, supra, it was held that (p. 833) : "This principle especially applies where either of the parties to the deed dies before the condition is performed, or before final delivery, and the condition is afterwards performed, or the delivery consummated. Ruggles v. Lawson, 7 Amer. Dec. 375; Shep. Touch. 59; Foster v. Mansfield, 37 Amer. Dec. 154. And, moreover, where the grantee dies after the first delivery, and before the final one, the trustee holding it [deed] may deliver it to the grantee's heirs; . . ." In the cases last cited the escrow deliveries were of deeds, but the same rule applies to other instruments. "The word 'escrow' is not limited to deeds. 'The term "escrow" was originally applied to instruments for the conveyance of land, but is now applied to all written instruments so deposited [with a third person]': 21 C. J., pages 865-6": *Eaton v. N. Y. Life Ins. Co. of N. Y.*, 315 Pa. 68, 74, 172 A. 121.

In the instant case the obligation of the maker of the note was irrevocably fixed when he executed it and delivered it in escrow under the terms and conditions of the written agreement. That is recognized in the auditor's report approved by the court where it is stated that "Prior to the death of Clarence Bell the arrangement constituted an irrevocable trust," but it goes on "but

since Clarence Bell, the payee, died before his father, the contingency on which he was to obtain delivery of the note never came into being. Therefore there never was a legal delivery of the note to Clarence Bell."

In holding that the contingency on which the payee was to obtain delivery of the note was his surviving the maker, and that there never was a legal delivery of the note to Clarence Bell, is where the auditor and the court below fell into error. When the auditor took ". . . the position that the parties assumed George M. Bell would die before his son Clarence . . ." he attempted to read into the escrow agreement something that was not put there by the parties, to-wit, a contingency that the son survive the father. According to the clear, definite, concise and explicit instructions in the escrow agreement, which could not be altered or modified without the consent of the parties, the future delivery was only to await the lapse of time and the death of the father, and, upon the happening of that contingency, it was to take effect by relation from the first delivery.

The very case relied on by the auditor and the court below, *Wagoner's Estate,* supra, is authority for the legal principle that, where an instrument is delivered in escrow for delivery to the obligee on the death of the obligor, delivery after death relates back to the original delivery. Restatement, Contracts, Pennsylvania Annotations, section 103. The time at which the note was to be delivered to the payee was definitely fixed, and since such delivery was only to await the lapse of time and the death of the maker, upon his death it should have been delivered to the heirs of the payee. The exceptions of claimants to the report of the auditor disallowing their claim should have been sustained.

Order reversed and record remanded to court below in order that a decree may be entered consistent with this opinion. Costs of this appeal to be borne by the estate.