## HINMAN and others *vs.* BOOTH.

Where a deed is delivered as an *escrow*, to become absolute on the execution of a bond by the grantee for the maintenance and support of a third pe rson during life, nothing can be claimed under it if the bond has never been executed, although such third person has died, and the grantee during his life provided him the necessary support.

Where a plaintiff in ejectment, in his declaration, claims an undivided *moiety* of the premises, and on the trial shows title to only *one-fourth*, it is in the *discretion* of the judge at the circuit whether he will *nonsuit* the plaintiff for the variance, or permit him to take a verdict according to the proof; and if he permit a verdict to be taken, the court *in bank* will allow the plaintiff to amend upon terms.

THIS was an action of *ejectment,* tried at the Chemung circuit in October, 1837, before the Hon. ROBERT MONELL, one of the circuit judges.

The plaintiffs were Michael Beardslee, Phineas Catlin, Guy Hinman, George T. Hinman and Mary Hinman. The declaration contained *four counts:* in the *first* count, the premises in question being thirty-eight acres of land, were claimed *in fee* by *all* the plaintiffs : in the *second,* Beardslee *alone* claimed *three-fourths* of the premises in fee, the same being undivided : in the *third,* Catlin *alone* claimed an undivided *moiety* of the premises in fee ; and in the *fourth count,* the three Hinmans in their own names claimed an undivided *moiety* of the premises in fee. The premises formerly belonged to one *Isaac Booth,* and were sold under an execution against him and purchased by one *Darling,* who subsequently conveyed them to *Jacob Swartwood* and *Elijah S. Hinman.* Hinman died, leaving *six* children his heirs at law, *three* of whom were the *Hinmans,* the plaintiffs in this cause, and thus title was shown in them to *one-fourth* of the premises instead of *one half,* as claimed in the fourth count of the declaration. As to the moiety belonging to *Swartwood,* it appeared that in February, 1829, Swartwood executed a deed to *Phineas Catlin* of an undivided moiety of the premises, and delivered it as an *escrow* to one *Darling,* to become absolute and be delivered to Catlin on his executing a bond to the overseers of the poor of the town

of *Catharine*, conditioned for the support of *Isaac Booth* during life. It was however agreed that Catlin should take immediate possession of the premises. In March, 1829, Catlin and the administrator of the estate of Elijah S. Hinman, demised the premises to A. & E. Shelton, who were to support *Isaac Booth* for the use of the premises, and they occupied the premises until the autumn of 1832. *Isaac Booth* resided with them until July or August, 1832, when he went to reside with his brother Elijah Booth, at whose house he died in October following. On the 15th October, 1832, just before the death of *Isaac Booth*, Swartwood conveyed his moiety of the premises to *Elijah Booth*; the bond which was to have been executed by *Catlin* never having been executed. It also appeared, that on the 28th September, 1836, the three *Hinmans* named as plaintiffs in this cause executed a quit-claim deed of the premises in question to *Beardslee*, one of the plaintiffs in this cause, he having previous to such deed claimed the premises under various conveyances executed in 1832. The *ouster* in this case was laid in *December*, 1836. The jury, under the charge of the judge, found a verdict in favor of the *Hinmans* for *one-fourth* of the premises, in favor of *Catlin* for *one moiety* of the premises, and *for the defendant* as to the portion claimed by *Beardslee.* The defendant asks for a new trial.

*J. A. Spencer*, for defendant.

*A. Taber*, for plaintiff.

*By the Court*, COWEN, J.   The condition upon which Swartwood's deed to Catlin was deliverable was never fulfilled. Catlin agreed to give a bond to the overseers of the poor conditioned to maintain Isaac Booth for life, and the deed was to remain as an *escrow* with Mr. Darling till that was done. This was a condition precedent, which never was waived by Swartwood; and, *non constat*, that the proper bond was ever even tendered. Indeed, the contrary appears; and for this *default* Swartwood disaffirmed the contract to convey, and deeded to Elijah Booth, under whom

Hinman v. Booth.

the defendant claimed. It was not enough that Catlin or the Sheltons upon his retainer did in fact maintain Isaac Booth for life. Swartwood had a right to this bond, and, it seems, becoming tired of waiting for it, and being troubled as he said in a business for which he got nothing, he therefore deeded to Elijah Booth, with whom Isaac was living at the time.

The *Hinmans*, it is conceded, had title to *one-fourth* of the premises, but it is said that they cannot recover, because in the declaration the claim one-half of the premises. The first answer is, that the objection of *variance* was not made at the trial. But if otherwise, we should now allow the plaintiffs to amend on easy terms, rather than grant a new trial. The case of *Holmes* v. *Seely*, 17 Wendell, 75, 78 to 80, is not, as supposed, incompatible with such a course. Indeed, it is expressly sanctioned by the cases cited at p. 80, and the opinion of the chief justice there. He thinks the verdict should be sustained in such cases by way of *amendment*, and not by simply overlooking the omission ; not by considering title admissible as a matter of absolute right where it varies from the undivided share claimed in the declaration. The distinction is of value, so far at least as it gives the judge at the circuit such control that he may in his discretion exclude the proof, where he sees that the defendant is surprised, or may be otherwise injured by the variance between the pleadings and evidence.

In this case there must be a new trial, unless the plaintiffs consent that the postea be so framed that the verdict shall be for the Hinmans as to one-fourth of the premises in question, and, as to the residue, for the defendant.