Allen, J.
 

 The plaintiff claims title to a portion of great lot three in the Hardenburgh patent, of which the demanded premises are a part, under Johannes Hardenburgh, one of the original grantees of the entire patent from the crown, in April, 1708. The grant was to Hardenburgh and six others. The "original patentee, Hardenburgh, by deed, the date of which is not given, conveyed his interest in the lands to Charles Broadhead and Johannes Hardenburgh, Jr. The latter, together with Abraham Hardenburgh, were parties to a partition deed in November, 1749, by which lot three, and five others of the forty-two lots into which the patent was subdivided, were conveyed to them. The other parties to the deed claimed by the recitals to have acquired or to have succeeded to the estate and interest of the original patentees other than Hardenburgh, and it was executed in behalf of some of the parties who were
 
 femes covert
 
 by attorneys or agents.
 

 Objections to this admission of the deed in evidence were made by the defendants, for the reasons that the recitals were not evidence against them, that the parties to it were interested or entitled as represented; and that the married women
 
 *111
 
 in whose behalf the deed had been executed were incompetent to make an attorney.
 

 The plaintiff, claiming under this partition deed and two other partitions subsequently made, a distinct and several portion of great lot three in possession of defendants, could only recover on the strength of his own title and the defendants, and those under whom they claim having been in possession from 1799 down, the plaintiff was driven to proof of actual title from the sovereign, the source of title. It therefore devolved upon him to show a valid partition by the true owners, by which the title in severalty to the demanded premises had become vested in him, or those to whose title he had succeeded. Title in the individuals assuming to make partition was essential to give effect to the partition for any purpose. Title to an undivided share and portion of the tract had been shown in Johannes Hardenburgh and Charles Broadhead, under whom, together with Abraham Hardenburgh, the plaintiff claims to derive title. These individuals were parties to the partition deed, and they, and those claiming under them, may be estopped from disputing the recitals in the deed or the title of the other parties to it. But neither the recitals in the deed, nor the acts of those under whom the plaintiff seeks to make title, by which an estoppel may be created against them, are evidence against the defendants, strangers to the deed and alien to the plaintiff’s title. The only evidence given or offered that the other parties to the deed, assuming to own six-sevenths of the tract, and to release and convey to Johannes Hardenburgh, Charles Broad-head and Abraham Hardenburgh large tracts of land, parcels of the patent, of which the premises claimed by the defendants are a small part, to hold in severalty, consisted of the recitals in the deed of partition. The declarations of those undertaking to convey were offered and received as evidence of a right to convey, and as one link in the chain of title upon which the plaintiff claimed to recover.
 

 A recital in a conveyance is only evidence against the parties to it, and privies in blood or in estate.
 

 
 *112
 
 It does not bind strangers or those who claim, by title, paramount.
 
 (Hill
 
 v.
 
 Draper,
 
 10 Barb.,
 
 454; Sharp
 
 v.
 
 Spier,
 
 4 Hill, 76;
 
 Penrose
 
 v.
 
 Griffith,
 
 4 Binn., 281;
 
 Carner
 
 v.
 
 Jackson,
 
 4 Peters, 1;
 
 Crane
 
 v.
 
 Lessee of Morris,
 
 6 id., 611.) The objection was distinctly taken, that the recitals of the deed were not evidence against the defendants, and that title to the premises assumed to be partitioned, had not been shown in the parties to it, and was overruled and the deed read in evidence. It was not proposed to be, and was not followed up by other evidence of title. The objection would have been obviated and the error cured had such evidence been given. But the deed, without such evidence, was no proof against strangers of a title in severalty to any part of the tract in any one claiming under it; and this important link in the chain of evidence being wanting, the plaintiff could not recover in the action without an entire disregard of the established rule, that a plaintiff, in ejectment, can only recover upon the strength of his own title.
 

 When this deed was offered and received in evidence the source of the defendants’ title had not been disclosed. It subsequently appeared that they claimed, under a deed given in 1799, by one Jonathan Hasbrouck, under which possession had been held from that time, and no connection was shown between Jonathan Hasbrouck and the title under which the plaintiff claimed. He was probably a brother of Jacob I. Hasbrouck, who survived one Peggy Rogers, who, it is claimed by the plaintiff, died in 1796, seized of an interest in the lands to which he has succeeded. So far as appears the title and claim of the defendants has been held adversely to that of the plaintiff from 1799 to the present time. They do not seem to claim from a common source, or under the same original grantees from the crown.
 

 Another objection to the deed was well taken. Several of the parties to it, and who were declared by the recitals to have succeeded to the ownership of undivided portions of the lands were femes covert; and it was executed in their behalf by attorneys under letters of attorney, which were in
 
 *113
 
 evidence. A married woman could not, at common-law, make an attorney.
 
 (Bac. Ab. Attorney B.; Snyder
 
 v.
 
 Sponable,
 
 1 Hill, 567.) It is claimed that this defect was cured by “ an act to confirm certain ancient conveyances and directing the manner of proving deeds to be recorded.” Passed February 16, 1771. (2 Van Schaick, 611.) That act, so far as the questions involved here are concerned, simply declared that no claim to any real estate whereof any person was then actually possessed, should be deemed to be void upon the pretense that the feme covert granting the same had not been privately examined before a proper officer. It has been held under this act that deeds executed before its enactment by husband and wife, were valid, and operative as against those claiming under the wife, although not acknowledged by her in any form.
 
 (Constantine
 
 v.
 
 Van Winkle,
 
 6 Hill,
 
 177; S.
 
 C., 10 N. Y., 422;
 
 Jackson
 
 v.
 
 Gilchrist,
 
 15 J. R., 89.) But it does not recognize or affirm the right of a feme covert to appoint or act by an agent or attorney, or ratify or validate deeds or grants made in her behalf by an agent or attorney. The act passed two years thereafter, March, 1773, and amendatory of the act of 1771 (2 Van Schaick, 765), did declare that any deed or real estate in the colony, vested in any feme covert living or residing out of the same, which had been since the passing the said act (February 16th 1771), or should hereafter be conveyed in the name of such feme covert by any attorney or attorneys of such feme covert, to any person or persons, whatsoever, in virtue of a letter of attorney from such feme covert and her husband, should be good and sufficient in the law to pass to and vest in the grantee the lands so conveyed, provided the letter of attorney was acknowledged in the manner prescribed for the acknowledgment of deeds. This act was supplemental, as well as amendatory, of the act of 1771; but it only gave effect to deeds executed by attorneys for married women after February 16th, 1771, and does not give effect to this deed executed in 1749.
 

 Other portions of the documentary evidence on the part of the plaintiff are subject to the same condemnation as evi
 
 *114
 
 dence against the defendants as the partition deed of 1149, hut as the admission of this deed in evidence under the objection of the defendants is fatal to the judgment, the other objections need not be considered.
 

 The judgment must be reversed, and a new trial granted, costs to abide event.
 

 All concur.
 

 Judgment reversed.