## LUCY A. DUNHAM, PLAINTIFF, v. JOHN TOWNSHEND AND OTHERS, DEFENDANTS.

*Sheriff's deed of property sold on execution — effect of, as proving the existence of a judgment — 3 R. S. (6th ed.), 635, sec 83 — from what circumstances the existence of a judgment will be inferred — only the purchaser at the sale can object to irregularities in the proceedings when a deed is executed to a redeeming creditor — 3 R. S. (6th ed.), 634, secs. 80, 81.*

This action, brought by the plaintiff to recover the possession of an undivided one-half of certain lots of land situated on the south side of Ninety-ninth street in the city of New York, was defended by one Townshend, who claimed that the plaintiff was not the owner of the interest claimed, but did not claim in his answer to be himself the owner of any interest in the property. Upon the trial it was shown that the premises in question were, on December 21, 1840, sold by the sheriff of the county of New York, pursuant to an execution issued to him, which recited the recovery of a judgment against one Hall for the sum of $4,611.40, and directed its collection either out of the personal property of the defendant or any real estate which he owned on January 21, 1839; that on April 22, 1842, a deed was executed by the sheriff conveying the premises, not to the purchaser, but to one Adriance, who, it was recited in the deed, had, as the assignee of another judgment creditor, redeemed the land under the statutes. It was further shown that the said Hall was on the said 21st day of January, 1839, the owner of the said premises, and that the plaintiff's claim was based upon the title acquired by Adriance under the said deed. It was also shown that the defendant Townshend had, in 1876, taken deeds conveying an undivided one-sixth of the property from other persons, who were not shown to have acquired or owned any interest in the land.

*Held,* that the omission to prove and read in evidence the judgment on which the execution was stated to have been issued, did not render the sheriff's deed ineffectual as a conveyance of the title of Hall in the premises.

*It seems* that section 83 of 3 Revised Statutes ([6th ed.], 635), declaring that the conveyance made by the sheriff "shall be valid and effectual to convey all the right, title and interest which was sold by such officer," requires the deed to be considered as evidence of the authority as well of the regularity of the sheriff's proceedings.

That, even if this were not so, yet as the sheriff's deed was made about forty years before the commencement of this action, and it was not until 1876 that the defendant Townshend obtained the two deeds, put in evidence as a portion of his defense, and as during that time no person appeared to have questioned the legality or regularity of the sheriff's proceedings, or his right to sell and convey the property under the execution, and as the property had been dealt with by his grantee and others upon the assumption that the deed had con-

veyed the title to it, it might well be presumed, as an inference of fact, that a judgment had been recovered, as it was mentioned in the execution, and that the deed made by the sheriff did convey the title to this land.

*Phillips* v. *Schiffer* (7 Lans., 347) followed.

That the objection that proof should have been given of the acquisition by Adriance of the right to the deed, to the exclusion of the purchaser at the sale, could not be raised by the defendant, who was a mere intruder, but only by the purchaser at the sale.

MOTION by the defendant for a new trial on exceptions ordered to be heard in the first instance at the General Term.

*A. B. Tappen,* for the plaintiff.

*John Townshend,* defendant, in person.

DANIELS, J. :

The plaintiff, claiming to be the owner of an undivided half, brought this action to recover the possession, of that part of five lots of land of twenty-five feet front each situated on the southerly side of Ninety-ninth street, 100 feet westerly of Second avenue, in the city of New York. Before, and at the time when the action was commenced, the other defendants were in the occupancy and possession of the property as lessees or assignees of the defendant, John Townshend. Possession of the property was demanded from the defendants before the commencement of the action, but it was not surrendered to the plaintiff. The defendant, John Townshend, defended the action, but he did not, by his answer, claim to be the owner of any interest in the property. It did appear that he had taken two deeds from other parties for an undivided one-sixth of the property, but it was not shown that either of the grantors in the deeds ever acquired or owned any interest in the land, or had any title whatever to convey to this defendant, and for that reason these deeds had no special operative effect by way of defense in the action.

The real defense which was made was that the plaintiff was not the owner of the interest claimed by her in the property, but that it was owned either by the city of New York, as land between high and low-water mark, or by a general assignee for the benefit of creditors, or a receiver appointed by the Court of Chancery. To support the allegation of title in the city, evidence was given on

behalf of the defendants tending to prove the fact to be that the land was overflowed by the ordinary full tides. This was denied by the plaintiff, whose testimony tended to prove the contrary, and that the land, with the exception of certain creek bottoms in it, was above the ordinary full tide. But, as the case was made to appear, the title of the city to the property was not established by this evidence, for it was shown to have disclaimed title to it, and on the application of a person acting in part on behalf of the plaintiff, it had directed a deed to be executed and delivered conveying the right, title and interest of the city in the property for the benefit of the persons for whom this individual was acting. It was further proven that the city authorities had for many years taxed this property as belonging to private owners, and had assessed it for local improvements, and that such taxes and assessments had been paid; and this conduct would probably preclude the city from claiming title to this property upon such debatable evidence as was introduced upon the trial of this action, and the additional fact that this property had been conveyed and dealt in and used as private property justified the conclusion adopted at the trial, that the city had no title to it as land between high and low water.

The general assignment, which was relied upon as including the conveyance of the property to a general assignee for the benefit of creditors, was executed by Charles Henry Hall and his wife to Daniel P. Hall and Charles Mullett Hall, on the 22d of November, 1839. This was an assignment in the ordinary form, for the benefit of the creditors of Charles Henry Hall; and after that, and on or about the 24th of November, 1842, a further assignment was executed by Charles Henry Hall to a receiver of his property, appointed by the vice-chancellor of the First Circuit of the State of New York. But before either of these assignments were made the sheriff of the county of New York received an execution, which he was directed to levy and collect out of the property of the judgment debtor, Charles Henry Hall. This execution recited the recovery of a judgment against Charles Henry Hall for the sum of $4,611.40, and directed its collection either out of the personal property of the defendant or any real estate which he owned on the 21st. of January, 1839, or at any time afterwards. Under this execution the sheriff seized and sold the interest of the judg-

ment debtor, Hall, in the land. This sale was made on the 21st of December, 1840, and it was followed by a deed on the 22d of April, 1842. It was not made to the purchaser of the property, but to Isaac Adriance, who, it is recited in the deed, had, as the assignee of another judgment creditor, redeemed the lands, as he was entitled to do under the statute, and upon such redemption and after the expiration of the statutory period, this deed was executed and delivered by the sheriff. And it was under this deed that the plaintiff in the action was held to be entitled to recover the possession of the property; for the grantee in it afterwards conveyed the property to Lewis A. Sayre, who, afterwards, with his wife and another, conveyed it to Maurice Wurts. That conveyance was succeeded by another, executed by Wurts and others to Oliver D. Dunham, who was the husband of the plaintiff. He was shown to have died in 1859, leaving the plaintiff and a minor son him surviving. This son died without issue during his minority, leaving the plaintiff, his mother, his sole and only heir. And under this title the plaintiff was entitled to maintain the action, if the sheriff's deed, as it was proven and read in evidence, conveyed the title of Charles Henry Hall in the property, which title had been derived under Samson Benson, and it was when he owned the land, a farm connected with the place, upon which McGown and his wife then resided. This portion of the farm consisted of low lands; McGown cultivated all the tillable lands, and the marshes or salt meadow he is stated to have used for pasture and to cut grass. The witness, who was his son, testified : " He cut the sedge off the salt meadows, also the salt grass, which is fine grass. My recollection is my father cut the grass on the salt meadows and pastured cattle there during all the time he lived there. * * * This occupation by my father continued down to 1833. He lived there in 1833 ; then he rented it out, as I understand it. It was sold in 1835. Margaret McGown, my father's mother, gave the deed." She was the daughter of Benson, and executed and delivered the deed of the property to Edward Sandford, which appeared to convey the title; for the occupancy of McGown under Benson was legal evidence that he and his daughter after him were the owners of this property. And Sandford, in 1835, by deed, conveyed the estate to Charles Henry Hall.

The objection most strenuously urged to the sheriff's deed, as a conveyance of the title, was placed upon the omission to prove and read in evidence the judgment on which the execution is stated to have been issued; for the deed did describe the land in such a manner as to locate and include the property in controversy. Whether the judgment should have been produced in evidence is, therefore, the important and controlling point arising in the case. The execution issued to the sheriff recited or stated the recovery of the judgment, on which the sheriff proceeded in selling and conveying the property. But this mere recital, although evidence against the parties themselves, would not, under the settled principle of law, affect the defendants in this action, for a recital is not evidence against a stranger to the instrument in which it is contained. (*Hardenburgh* v. *Lakin,* 47 N. Y., 109; *French* v. *Edwards,* 13 Wall., 506–515.) Proof of the judgment has in earlier cases been considered to be essential to the support of a title derived under an execution sale (*Jackson* v. *Roberts' Executors, etc.,* 11 Wend., 422–441), and such proof has been made part of actions brought to recover on the strength of such a title. (*Jackson* v. *Vanderheyden,* 17 Johns., 167; *Jackson* v. *Sternberg,* 20 id., 49.) But these cases arose under the Revised Laws, which did not declare the effect of a conveyance made by the sheriff pursuant to a sale under an execution. They provided only for the course of proceeding, and declared the duties and obligations of the sheriff in advertising, selling and conveying the property. (1 R. L., 500–505.)

When the Revised Statutes were enacted, it was then further declared that the conveyance made by the sheriff under its provisions, "shall be valid and effectual to convey all the right, title and interest, which was sold by such officer" (3 R. S. [6th Ed.], 635, § 83); and that would seem to have been intended to give the sheriff's deed a much greater effect as evidence than it could have had prior to and in the absence of this enactment. This provision was not considered in *Townshend* v. *Wesson* (4 Duer, 342), but the old rule was referred to as applicable without any reference whatever to this statutory addition. It was not, however, important that it should be there considered in the decision of the case, for it appeared, as a matter of fact, that there was no judgment under which the sale, then in controversy, had been made. It was under this state

of the law, that the sale and conveyance were made, through which the plaintiff claims to have derived her title. And the deed certainly could not be valid and effectual to convey the right, title and interest of the debtor, unless it is to be considered as evidence of the authority, as well as of the regularity of the sheriff's proceedings.

But it is not necessary to dispose of this case wholly upon the effect of this provision of the statute, for the sheriff's deed was made about forty years before the commencement of this action, and it was not until the year 1876 that the defendant, Townshend, obtained the two quit-claim deeds, put in evidence in the case as a portion of his defense. To that time certainly no person appears to have questioned the legality or regularity of the sheriff's proceedings, or of his right to sell and convey the property under the execution, but the property was dealt with, by his grantee and others, upon the assumption that his deed had conveyed the title to it. And under these circumstances, with this lapse of time in its favor, it may well be presumed, as an inference of fact, that a judgment had been recovered, as it was mentioned in the execution, and that the deed made by the sheriff did convey the title to this land. A similar course to this was sanctioned sustaining a controverted title in *Phillips* v. *Schiffer* (7 Lans., 347), and no good reason appears for now rejecting this title.

It has been objected, that proof should have been made of the acquisition by Adriance of the right to the deed, to the exclusion of the purchaser at the sheriff's sale. But what the statute provided for in that respect was to transpire, as it is stated to have done, wholly between the sheriff and the person acquiring the right to the deed (3 R. S. [6th Ed.], 634, §§ 80, 81), and even if he proceeded irregularly, or accepted evidence of the right of the vendee, inferior to that provided for by the statute, the only person who could complain of his conduct was the individual who became the purchaser at the sheriff's sale. ( *Wood* v. *Morehouse* 45 N. Y., 369, 378.) And the case of *Moores* v. *Townshend* (3 Cent. Rep., 441), is in no respect inconsistent with this authority. Neither are the others referred to on the part of the defendant. This title was paramount to that conveyed by the general assignment made by Hall for the benefit of his creditors, and so it was also to every interest which

might otherwise have been affected by the conveyance or assignment to the receiver in chancery.

By the evidence given upon the trial the defendants were mere intruders upon this property, having no right, title or interest whatever therein, and even though the plaintiff's title, under the sheriff's deed, may have been to some extent irregular or defective, they had no such relation to the proceeding or the property as entitled them, or either of them, to raise the objection. (*Jackson* v. *Harder*, 4 Johns., 202–210.)

The title, in any view which may be taken of it, was sufficient against these defendants, and the motion made for a new trial should be denied, and judgment directed on the verdict in favor of the plaintiff.

BRADY and BARTLETT, JJ., concurred.

Motion for new trial denied, and judgment ordered for plaintiff on the verdict.