# Ashford v. Prewitt, *et al.*

*Bill to enjoin Suits in Equity.*

1. *Escrow; delivery to attorney.*—As a general rule delivery of a deed to the attorney of a grantee can not be a delivery in escrow; but where

[Ashford v. Prewitt, et al.]

the delivery of the deed to the attorney is accompanied by a memorandum in writing, signed by the grantor and duly witnessed, explaining the character of the delivery, and reciting the condition upon which the deed is to be delivered to the grantee, such attorney becomes the holder of said deed in escrow.

2. *Same; when title passes.*—A deed delivered as an escrow can have no effect as a conveyance of title until the condition has been performed ; but when, after the performance of the condition upon which it is held in escrow the deed is delivered to the grantee or his agent, it then becomes operative as a deed, and title passes from the date of such delivery.

3. *Same; effect of decree after delivery of deed in escrow.*—Where, on a bill filed to enjoin ejectment, it is shown that after delivering in escrow, a deed to the land sued for, the complainant obtained a decree against the grantee declaring the title to the lands to be in him, and thereafter the condition upon which the deed was to be delivered was performed, and the deed was delivered to the grantee, the said decree in favor of the complainant is no bar to defendant's claim under the deed, since the deed did not take effect until the happening of the event upon which delivery was conditioned ; and the title acquired through said deed is a complete defense to the maintenance of complainant's bill for injunction.

APPEAL from the Chancery Court of Lawrence.
Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellant, Mrs. Caroline Ashford, against the defendants ; and prayed to have enjoined several statutory real actions in the nature of ejectment for the recovery of the possession of certain lands ; and also prayed for a decree declaring that the complainant was clothed with a paramount equity, which dominated the title of Mrs. Prewitt, and those claiming under her.

Upon the final hearing, on pleadings and proof, the chancellor denied the relief prayed, and dismissed the complainant's bill. From this decree the present appeal is prosecuted ; and said decree is here assigned as error.

R. C. BRICKELL and D. D. SHELBY, for appellant. No brief came to the hands of the Reporter.

R. W. WALKER, for appellant.—1. The claim of the appellees, having for its foundation said escrow deed, was barred and concluded by the decree, rendered after the execution and delivery in escrow of said deed, vesting in the appellant, absolutely and without condition,

[Ashford v. Prewitt, *et al.*]

the title to the land now in dispute. The principle of *res adjudicata* extends not only to questions of fact and of law which were decided in the former suit, but also to grounds of recovery or defense which might have been, but were not, presented.—*Graham v. Culver*, 31 Amer. St. Rep. 105, 121 ; *Harmon v. Auditor*, 5 Amer. St. Rep. 502, 507 ; *Belvit v. Morgan*, 7. Wall., 619; *Tankersly v. Pettis*, 71 Ala. 186 ; *May v. Coleman*, 84 Ala. 326, 4 So. Rep. 144.

2. Upon the execution and delivery of a deed in escrow nothing further remains to be performed by the grantor. Nothing he can afterwards do can prevent the deed being operative upon the happening of the prescribed event. He parts with all domain and control. He puts himself in such relation to the property, that upon the happening of the prescribed event, the happening or not happening of which is a matter with which he has nothing to do, the title must pass out of him and vest in the grantee. *Admr's of White v. Williams*, 3 N. J. Eq., 376, 383 ; 6 Amer. & Eng. Encyc. of Law, p. 863.

3. The fact that the wife's dower right was inchoate when a judgment was rendered in a suit to which she was a party, under the pleadings in which her contingent right to dower could have been the subject of adjudication, though in fact she did not set up any claim to protection of her dower right, and the judgment made no mention of it, does not prevent the judgment in such case from operating as a bar to her claim to dower in a subsequent proceeding, instituted after the death of her husband, because the question of dower might and ought to have had a hearing on the judgment rendered in the former case.—*Jordan v. Van Epps*, 85 N. Y. 427; 21 Amer. & Eng. Encyc. of Law, 221, note.

4. Where a claim which is contingent, or which has not matured, is involved in a chancery suit, the existing vested rights of the parties may be settled by the decree, and yet such contingent or unmatured claim may be saved from being affected, by simply so framing the decree, as to make it without prejudice to such claim.— *Higgins v. Waller*, 57 Ala. 396. The decree in such case concludes contingent interest unless it is excluded from the operation of the decree by some such saving clause. *Mahoney v. Horan*, 49 N. Y. 111 ; 10 Amer. Rep., 335.

J. B. MOORE and ROULHAC & NATHAN, *contra.*—I.

[Ashford v. Prewitt, *et al.*]

The decree of March 12, 1877, did not operate as *res adjudicata* of the title by which the appellees were entitled to the recovery of the land involved in the ejectment suit. The conveyance from Richard Prewitt to Josephine Prewitt was based upon a valuable consideration—the contemplated marriage between the grantor and grantee. *Prewitt v. Wilson*, 103 U. S. 22. There was no notice, actual or constructive, of the claim of Mrs. Ashford to the lands now claimed by defendants in the present suit, and they were, therefore, protected against her secret equity. If Mrs. Ashford had had an equity in the land as against her own husband, Thomas H. Ashford, or even against Richard Prewitt, purchasers for valuable consideration, in good faith, and without notice of any outstanding equity in her, would be protected in equity, as at law, against her demand. Nor would it matter that such purchaser bought from her husband, from whose breach of duty the trust arose, under such circumstances, or from a purchaser from him. The protection to an innocent and *bona fide* purchaser could be invoked alike in either case. *Preston v. McMillan*, 58 Ala. 84; *Whaley v. Whaley*, 71 Ala. 159; *Anthe v. Heide*, 85 Ala. 236, 4 So. Rep. 380; *Marks v. Cowles*, 61 Ala. 299; *Lewis v. M. B. & L. Asso.*, 70 Ala. 276; *Winston v. Mitchell*, 87 Ala. 404–5, 5 So. Rep. 741; *McCall v. Rogers*, 77 Ala. 352; *Mobile L. Ins. Co. v. Randall*, 71 Ala. 220; *Walker v. Elledge*, 65 Ala. 51. So that, if that were the true state of the case, and the record in the first case between these parties, introduced in this, shows that it was, the decree of March 12th, 1877, was contrary to law, and should not have been rendered.

II. Execution of the escrow deed was not brought in issue by the pleadings in the cause in which the deed of March 12, 1877 was rendered. When the pleadings in that case were made up the said escrow deed had not come into existence. When a deed is delivered as an escrow to take effect upon the performance of a condition in the future, no title passes until after its delivery subsequent to the performance of said condition.—5 Amer. & Eng. Encyc. of Law, 450; 6 Amer. & Eng. Encyc. of Law, 857–867; *Fuller v. Hollis*, 57 Ala. 435; 1 Devlin on Deeds, § 322. Therefore the decree of March 12, 1877, does not preclude defendant from claiming the benefit to the title acquired under this deed.

[Ashford v. Prewitt, *et al.*]

Such title was not involved in the issue of that suit.— Smith's Leading Cases, 673 ; 2 Black on Judgments, § 693; Freeman on Judgments, § 263; *McCall v. Jones*, 72 Ala. 368 ; *Pruitt v. Holly*, 73 Ala. 369 ; *Prewitt v. Ashford*, 90 Ala. 301, 7 So. Rep. 831 ; 2 Black on Judgments, § 656; Bigelow on Estoppel, 39–40; *Higgins v. Waller*, 57 Ala. 401 ; *Morrison v. Beckey*, 6 Watts, 349 ; Freeman on Judgments, § 268. A decree to constitute *res adjudicata* must be upon the merits of the case.—*McElmoyle v. Cohen*, 13 Pet. 327; *Michigan Ins. Bank v. Eldred*, 130 U. S. 693 ; *Campbell v. Holt*, 115 U. S. 620–5 ; *Townsend v. Jemison*, 9 How. 407 ; *Bizzell v. Nix*, 60 Ala. 282.

III. There is no merit in the contention for appellant that the delivery of the deed in escrow to J. B. Moore was not a delivery in escrow, on the theory that there could be no escrow where the deed is delivered to the grantor, his attorney or agent. A written memorandum, which explains the conditions of the delivery, and the terms upon which it is to be delivered to the grantee, being signed by the grantor and duly witnessed, and delivered contemporaneously with the deed to the attorney of the grantee, constitutes such attorney, for that purpose, the agent of the grantor, and the two instruments must be construed together.—*Collins v. Whigham*, 58 Ala. 438; *Jordan v. Jordan*, 65 Ala. 301 ; *Robbins v. Webb*, 68 Ala. 393. This memorandum explained the conditions upon which the deed was to be delivered, and the grantor thereby constituted the attorney of the grantee the holder of the deed in escrow, which she had the right to do ; and this appointment was legal, and did not prevent the deed from being held in escrow.—6 Amer. & Eng. Encyc. of Law, 862–3 ; *Watkins v. Nash*, L. R. 20 Eq. 262 ; *Cincinnati &c. R. R. Co, v. Iliff*, 13 Ohio St. 235.

IV. The force of this conclusion can not be effected by the fact that the deed, which was delivered in escrow, was a quit-claim deed. In all other respects, except that the grantor is not precluded from acquiring any other title to the property conveyed, which in an ordinary deed would pass to his grantee by force of the warranty, a quit-claim deed, as between the parties thereto, is just as effectual to convey property as any other deed could be. The grantor affirms no title or possession, but what he has, or either, is passed thereby.—1 Devlin on Deeds, § 27 ; *Kyle v. Kavanaugh*, 103 Mass. 356 ; *Potter v. Tuttle*, 22

Conn. 512; *McConnell v. Reed,* 4 Scam. 117, 38 Amer.
Dec. 124; *Hamilton v. Doolittle,* 37 Ill. 478; *Gazley v.
Price,* 16 Johns. 267; *Ketchum v. Evertson,* 13 Johns.
359; *Prewitt v. Ashford,* 90 Ala. 301, 7 So. Rep. 831.

STONE, C. J.—This litigation, in some of its forms,
has been many times before this court. The land,
which has been the subject of the various suits, is a tract
of about seven hundred acres, lying in Lawrence county
south of the Memphis & Charleston railroad. The de-
scriptive numbers of the land are shown in the transcript.
For the purposes of this suit we need go no farther back
than to the time when the title was in Thomas H. Ash-
ford, husband of Caroline Ashford, appellant in this
cause. Some time between 1855 and 1860 Thomas H.
Ashford sold and conveyed these lands to Richard Prew-
itt, Caroline, his wife, joining in the conveyance. They
conveyed by warranty deed, and Prewitt went into im-
mediate possession under his purchase. Some question
was raised in some of the stages of the litigation whether
Prewitt paid to Ashford the purchase money of this land;
but we think the proof satisfactorily shows its payment
long before any question was raised as to the rightful-
ness of his title. We will show further on that although
the title was taken and held in the name of Thomas H.
Ashford, the husband of Caroline, she claims that it was
paid for with her money, part of the *corpus* of her statu-
tory separate estate, invested by her husband and trustee
in the land, and the title improperly taken in his name.
Against this claim and attempt of Mrs. Ashford to trace
her money into the land, and to fasten an equity upon it,
both Richard and Josephine Prewitt separately plead and
set up that they are *bona fide* successive purchasers of the
land from the said Thomas H., without notice of the
equitable claim of said Caroline. This plea is in form
sufficient, its averments are proved, and we think there
is a failure of proof to trace notice to either of them. We
have made these statements for the purpose of slabbing
off these inquiries, as not presented by the present re-
cord.—*Prewitt v. Wilson,* 103 U. S. 22.

In 1871 Mrs. Caroline Ashford, then the widow of
Thomas H. Ashford, instituted a suit in chancery against
the administrator of her deceased husband, against
Richard Prewitt, Josephine Prewitt, and certain creditors

[Ashford v. Prewitt, *et al.*]

of Richard Prewitt, the purpose of which was to have it declared and decreed that the lands in controversy, together with other lands, the title to which had been taken in the name of Thomas H. Ashford, had been purchased by him with moneys which were of the *corpus* of her statutory separate estate, and were rightfully her property.   Richard Prewitt's defense was that he had bought and paid for the lands and received a conveyance from Ashford and wife, without notice that her money had been used in the purchase. Josephine, who had title from Richard Prewitt, supplemented his defense with the averment and plea, that while she was single, in consideration that she would marry the said Richard, he in 1866 conveyed said lands to her by warranty deed, and that thereupon, and in consideration thereof, she did marry the said Richard and became his wife; and that not until long afterwards had she any knowledge or notice that the moneys of said Caroline had purchased the lands.

The administrator of one Liles, a creditor of said Richard Prewitt, had instituted proceedings to subject the lands in controversy to the payment of a debt of said Richard.   The ground of his contention was, that the deed from Richard to Josephine Prewitt was fraudulent. A decree had been rendered, dismissing the bill, and the case was pending on appeal in this court.   In this condition of things, an agreement, in the nature of a compromise of the conflicting claims to the lands involved in this suit, was entered into between Mrs. Ashford and the Prewitts.   That agreement, however, in no way affected the suit by Liles to subject the land to the payment of his claim.   The agreement was entered into in November, 1875, and consisted of the following : Mrs. Ashford signed a quit-claim deed to Richard Prewitt, duly attested, which contains this clause :  "In consideration of said alleged payment, (payment of the purchase money by Richard Prewitt to Thomas H. Ashford), and other considerations me thereunto moving, I have, and do by these-presents convey all the right, title and interest I have in said above described lands south of said line of railroad [the lands here sued for] to said Richard Prewitt."   This deed was not delivered to Richard Prewitt, and was not intended to be delivered to him except on a future contingency.   It was delivered to J. B.

[Ashford v. Prewitt, *et al.*]

Moore in escrow, accompanied by the written power and authority of Mrs. Ashford, which was also signed by her, and properly witnessed. Its terms were, and are here copied: "I have this day executed a quit-claim deed to certain lands in Lawrence county, Alabama—705 acres lying South of the Mem. & Ch. R. R.—to Richard Prewitt. Said lands are described in said deed. I have delivered said deed to J. B. Moore as an escrow, to be delivered to said Prewitt upon the happening of the following contingency : If a certain suit now pending in the Supreme Court of Ala.—Lile's Admr. v. said Prewitt *et al.*—is affirmed (decided in favor of Prewitt) said Moore is to deliver said deed to said Prewitt. Otherwise, he is to hold subject to my order."

One of the terms of the agreement was that the Prewitts were to desist from all further defense to the said suit of Mrs. Asbford for the recovery of other lands, in which she was seeking to fasten the same equity she asserted in the lands involved in this case. There is a contention that Prewitt, as one of the terms of the compromise, agreed and promised to furnish certain important testimony for Mrs. Ashford, in aid of her claim to the other lands sued for, and that he failed to do so.

This is denied. We do not think the proof in regard to the last alleged promise and its breach renders it necessary that we should comment upon it.

The result of said agreement of compromise was that the Prewitts, husband and wife, and their solicitors ceased to give attention to the cause, ceased to look after it, and prepared and offered no proof on its final hearing. They strictly observed and kept their agreement to make no farther defense to the said suit of Mrs. Ashford.

In October, 1877, Mrs. Ashford's suit to enforce a trust in the lands was brought to a final hearing. She had a recovery as to the other lands sued for, and the Prewitts not being represented and offering no proof, it was decreed that she was entitled to the lands south of the railroad—the lands which are the subject of this suit. The decree of the chancellor declared that the legal title was vested in her, but no deed was made, or ordered to be made. Some steps were afterwards taken to get rid of this decree; but nothing was accomplished by them. On an appeal from it to this court, it was af-

firmed on certificate, no transcript having been filed.

The case of Lile's Admr. v. Prewitts was not finally disposed of in this court until October, 1881, when it was affirmed ; the court holding that Josephine Prewitt's title under her deed from Richard Prewitt was paramount to the claim of the creditors of the latter. Richard Prewitt died in 1882, and in the year 1887 J. B. Moore delivered to his heirs the deed which Mrs. Ashford had placed in his hands as an escrow in 1875.

In 1887–8 the decree which Mrs. Ashford had recovered against the Prewitts in 1877 was executed, and she was put in possession of the lands, which are the subject of this suit, thus evicting Mrs. Prewitt and her sub-vendees. Thereupon, the persons thus evicted brought their several statutory real actions against Mrs. Ashford for the purpose of regaining the possession. Those suits were decided by the circuit court in favor of Mrs. Ashford ; but on appeal to this court, the judgments of the circuit court were reversed, this court holding that the legal title to the land was not in Mrs. Ashford, but was in Mrs. Prewitt and those holding under her, by virtue of Mrs. Ashford's quit-claim deed.—*Prewitt v. Ashford*, 90 Ala. 294. One principle declared by this court was, that the facts of the case did not bring it within the influence of section 3595 of the Code of 1886, and not being governed by that statute, the "decree rendered by the chancery court, purporting to divest the legal ti-tle to land out of one person and vest it in another, does not, *proprio vigore* confer a legal title which can avail any thing in an action at law." This court further de-clared that "the plaintiff, on the facts proved, would have been entitled to the general affirmative charge in his favor."

The object of the present bill by Mrs. Ashford was and is to enjoin those statutory real actions for the re-covery of the possession of the lands, and to obtain a de-cree declaring that by virtue of the decree in her favor rendered in 1877, she became clothed with a paramount equity, which dominates the title of Mrs. Prewitt, and those claiming under her. The case was tried on plead-ings and proof, and the chancellor denied her all relief, and dismissed her bill. From that decree the present appeal was prosecuted.

In *Jones v. Woodstock Iron Co.*, 95 Ala. 551,

the case of Prewitt v. Ashford was overruled as to the principle noted above. Under the later ruling, if held applicable to this case, we would feel forced to hold that the decree of the chancellor rendered in the former suit in 1877 vested the legal title in Mrs. Ashford, so far as the court was then capable of so vesting it. But to obviate any wrong or injustice that might grow out of the change, we added this clause to that opinion : "That no injustice may be done to litigants who, under the influence of the decision made in the case of *Prewitt v. Ashford*, 90 Ala. 294, *supra*, have instituted proceedings to procure the legal title, we declare and hold that as to such cases the case of *Prewitt v. Ashford* operates as a rule of property." The effect of this declaration, which we have no intention of departing from, is to hold that the decree of 1877 did not clothe Mrs. Ashford with a legal title to the property sued for, but left it to be governed by *Prewitt v. Ashford*, 90 Ala. 294.

It is contended for appellant that the effect of the decree in *Ashford v. Prewitt et al.* in 1877 was to bar and cut off all claim to the property involved in that suit, as against all parties to it; and inasmuch as Mrs. Prewitt was a party, she is concluded by the decree, and will not be heard to assert any rights in opposition to it. We regard this as the question of merit on this appeal.

In the original suit of Mrs. Ashford against the Prewitts *et al.*—the suit of 1871—J. B. Moore was solicitor for the Prewitts. The deed in escrow was placed in his hands to be delivered to Richard Prewitt, in the event the case of *Lile's Admr. v. Prewitt* was decided in favor of the latter. It is contended for appellant that inasmuch as said Moore was the attorney of Prewitt in that litigation, he could not be made the agent to receive and hold the deed in escrow, with authority to deliver to his own client on a contingency. The logic of this argument, if sound, would lead to this result : The delivery to Moore would be a delivery to Prewitt, his client, making it a completely executed conveyance—an operative title from that time. If that be the true doctrine as applied to the facts of this case, the legal title to the lands was vested in Richard Prewitt, and through him in his wife, in 1875. Having the title, they could and should have defended the suit of 1871 ; and failing to do

so, the decree of 1877 in favor of Mrs. Ashford is a bar
to the assertion of any title the Prewitts then
held. *Shelby v. Tardy*, 84 Ala. 327, is relied on
in support of this contention. It employed this lan-
guage : "The general rule is, that a delivery of a deed to
a grantee, or to his attorney, can not be a delivery in
escrow." The case of *Duncan v. Pope*, 47 Ga. 445, 451,
had said : "If delivered to the grantee, or his agent, the
delivery is complete, and the paper is not an escrow."
What is said in *Shelby v. Tardy* is certainly the general
rule. As a general rule, the attorney or other agent
simply represents—stands in the shoes of—the client, or
principal, and a delivery to him as such attorney, or
agent, is a delivery for the benefit of the principal, and
is equivalent to a delivery to the principal. The con-
trolling reason why a delivery to the principal, or to his
agent as such, can not be shown to be a delivery in es-
crow is, that when a deed is found in the possession of
the grantee, the law presumes it is rightfully there, and
that it has been delivered in consummation of the con-
tract of sale. To allow parol proof that it was not a de-
livery in absolute right, but to take effect conditionally,
would let in all the mischiefs intended to be guarded
against by the statute of frauds.—*Miller v. Fletcher*, 27
Gratt. 403, 21 Amer. Rep. 356.

In *Cin. W. & Z. R. R Co. v. Iliff*, 13 Ohio St. 235, it
was decided, that "the mere delivery of manual possess-
ion of the deed is not necessarily a delivery of the deed;
and in cases where the acceptance of an agency from
both involves no violation of duty to either, it is com-
petent for the releasor to make the agent of the releasee
his own agent for the purpose of holding the deed as an
escrow, and returning it to him, the releasor, in case of
non-performance of a stipulated condition. There is no
such personal identity between the releasee and his agent
as to preclude the latter from becoming the depositor of
an escrow." In *Watkins v. Nash*, L. Rep. 20. Eq. Cas.
262, the court ruled, that "The delivery to the solicitor
of the grantee of an instrument executed by the grantor
will not convert the instrument from an escrow into a
deed, provided the delivery is of a character negativing
its being a delivery to the grantee." In Tiedeman on
Real Property, § 815, (Enlarged Edition), is this langu-
age : "It is always necessary in delivering a deed as an

escrow to be explicit as to the intent with which the del-
livery was made, and it would be much more prudent if
the delivery is accompanied by a memorandum in writ-
ing, explaining the character of the delivery to the bailee,
and the terms of the condition upon which the delivery
to the grantee depends. * * * In an escrow no title
vests in the grantee until the second delivery.'' See also
1 Devlin on Deeds, § 316, and note 4; *So. Life Ins.* &
*Tr. Co. v. Cole*, 4 Fla. Rep. 359; 5 Amer. & Eng. Encyc.
of Law, 450, n. 1.

In this case, as we have shown above, we are not left
in doubt, nor required to rely on the dangers and uncer-
tainties attending oral testimony, in arriving at Mrs.
Ashford's intention in delivering the paper to Mr. Moore.
Her selection of him to be her agent, and the authority
she conferred upon him, are all expressed in writing,
signed by her, attested by her solicitor, and delivered to
Moore contemporaneously with the paper with which
he was intrusted, and which he was to deliver on the
happening of an event, at that time contingent. We
hold that the delivery in escrow was legal and valid,
and that the paper did not take effect as a deed delivered,
at the time it was placed in his hands.

It is contended for Mrs. Ashford that the affirmance
of the decree and judgment in the case of *Lile's Admr.
v. Prewitt* was not the sole contingency, nor the sole con-
sideration on which the quit-claim deed was to be deliver-
ed. We confess that we are not satisfied by the testimony,
either that an additional agreement was made, such as is
claimed, or that if made, it has been violated. We will
not discuss that proposition farther, but decline to con-
sider it as exerting any influence in reaching a proper
conclusion in this case.

It will be remembered that the event upon which the
quit-claim deed was to be delivered did not transpire until
1881. Till then there was no authority to deliver the
paper; and if it had been delivered it would have vested
no title, legal or equitable, in the grantee. It was not
delivered until after the affirmance of *Lile v. Prewitt*.
What effect does the decree of 1877, rendered in the
original suit of *Ashford v. Prewitt et al.*, have on
the right of Mrs. Prewitt, and those holding under her
to defend this suit? She was a purchaser for value from
Richard Prewitt, and held his deed with full covenants

of warranty. Whatever title he acquired after executing that deed, no matter how acquired, passed *eo instanti* to Mrs. Prewitt, his grantee, by virtue of the covenants in his deed to her.—*Chapman v. Abrahams*, 61 Ala. 108, and authorities cited.

In *Frost v. Beekman*, 1 Johns. Ch. 288, Chancellor Kent said : "Every deed takes effect from the delivery ; and the reasonable inference from the transaction is to consider the deed as operating from the time of the performance of the condition and the actual delivery to the grantee." In Tiedeman on Real Property, § 815, the author says : "The importance of distinguishing escrows from other deeds like those above described lies in this fact : escrows can operate only from the time that the condition is performed. A delivery before the performance of the condition will not have the effect of passing the title to the grantee, not even against innocent purchasers for value of the grantee."—*Black v. Shreeve*, 13 N. J. Eq. 455.

In 5 Amer. & Eng. Encyc. of Law, 450, the principle is thus expressed : "If the deed is handed to a stranger, with instructions that the delivery of the deed shall depend upon the happening of an uncertain event, it is an escrow. * * * Escrows can only operate from the time when the condition is performed. A delivery before the performance of the condition will not have the effect of passing the title to the grantee. In an escrow no title passes until the second delivery." To the same effect see 6 *Id.* 867.

In 3 Washburn on Real Property, Marg. page 585, it is said : "Whether putting a deed into a third person's hands is a present delivery or an escrow, depends upon the intent of the parties. If the delivery depends upon the performance of a condition, it is an escrow ; otherwise it is a present grant. * * * But if it be expressly delivered as an escrow, to be delivered at a future time, it is not a present conveyance. * * * When a deed has been delivered as an escrow, it has no effect as a deed until the condition has been performed, and no estate passes until the second delivery has been made ; though when such second delivery has been made, it relates back to the first for many purposes, and is considered as a consummation of an inchoate act then begun." Same author on p. 586 : "Until the performance of the condition, it (the deed) must remain a mere scroll in writing,

[Milner *et al.* v. Stanford.]

of no more efficacy than any other written scroll; but when, upon the performance of the condition, it is delivered to the grantee or his agent, it then becomes a deed to all intents and purposes, and the title passes from the date of the delivery." Continuing on pp. 586–7, the same author says : "If, at the time of the first delivery, the lessor be a *feme sole*, and before the second delivery she take a husband ; or, if before the second delivery she dieth ; in this case if the second delivery shall not have relation to this intent to make it the deed of the lessor *ab initio*, but only from the second delivery, the deed in both cases should be void ; and, therefore, in such case, for necessity, and *ut res magis valeat quam pereat*, to this intent by fiction of law, it shall be a deed *ab initio* ; and yet, in truth, it was not his deed until the second delivery." See *Hinman v. Booth*, 21 Wend. 267 ; *Hathaway v. Payne*, 34 N. Y. 92 ; *Coleman v. Lansing*, 65 Barb. 54 ; *Flagg v. Mann*, 2 Sumner Rep. 486.

We have now stated the rule which declares when an escrow deed takes effect, and we have stated the exceptions, the reason and necessity they rest on, and the extent of their operation. None of the exceptions affect this case, for Mrs. Ashford is not shown to have married or died after placing the writing in J. B. Moore's hands as an escrow. It had no effect as a conveyance of property, or any interest therein, until the happening of the event on which it was to be a second time delivered. Till then it could not be made the ground of an action or defense, either at law or in equity.—*Malloney v. Horan*, 47 N. Y. 111, 10 Amer. Rep. 335.

We hold that the decree of 1877, rendered in the suit of 1871, is no bar to the defense set up in this case, and that the quit-claim deed of 1875, under the testimony shown in this record, is a complete defense to this suit.

The decree of the chancellor is affirmed.